[ORAL ARGUMENT NOT YET SCHEDULED]
No. 25-5256

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
──────────────────────────
HESAI TECHNOLOGY CO., LTD.; HESAI INC.,

*Plaintiffs-Appellants*,

*- v. -*

UNITED STATES DEPARTMENT OF DEFENSE; PETER B. HEGSETH,
IN HIS OFFICIAL CAPACITY AS SECRETARY OF DEFENSE; VIC S.
RAMDASS, IN HIS OFFICIAL CAPACITY AS ACTING ASSISTANT
SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY,

*Defendants-Appellees.*
──────────────────────────
On Appeal from the United States District Court
for the District of Columbia
Case No. 1:24-cv-01381-PLF

**BRIEF FOR PLAINTIFFS-APPELLANTS
HESAI TECHNOLOGY CO., LTD. AND HESAI INC.**

James E. Tysse
Lide E. Paterno
Caroline L. Wolverton
Margaret O. Rusconi
Natalia Heguaburo
AKIN GUMP STRAUSS HAUER & FELD
LLP
2001 K Street NW
Washington, D.C. 20006
(202) 887-4000
jtysse@akingump.com

*Counsel for Plaintiffs-Appellants
Hesai Technology Co., Ltd. and
Hesai Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.  Parties and Amici

Plaintiffs-Appellants are Hesai Technology Co., Ltd. and Hesai Inc.

Defendants-Appellees are the United States Department of Defense; Peter B. Hegseth, in his official capacity as Secretary of Defense; and Vic S. Ramdass, in his official capacity as Acting Assistant Secretary of Defense for Industrial Base Policy.

There are currently no parties who have intervened or moved to file an *amicus* brief before this Court.

## B.  Rulings Under Review

The rulings under review are the Order and Opinion denying Plaintiffs-Appellants' Motion for Summary Judgment and granting Defendants-Appellees' Cross-Motion for Summary Judgment (ECF Nos. 59, 60), and any and all of the Court's rulings adverse to Plaintiffs-Appellants incorporated in, antecedent to, or ancillary to the Order and Opinion, issued by the Honorable Paul L. Friedman.  The Order and

Opinion were entered by the United States District Court for the District of Columbia on July 11, 2025.

## C. **Related Cases**

This case has not been before this Court or any other court other than the district court below.

The following case also challenges a decision by the Department of Defense to designate an entity as a "Chinese military company" pursuant to Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021: *SZ DJI Technology Co., Ltd. et al. v. U.S. Department of Defense et al.*, No. 25-5367 (D.C. Cir.) (on appeal from *SZ DJI Technology Co., Ltd. et al. v. U.S. Department of Defense et al.*, No. 1:24-cv-02970-PLF (D.D.C.)).

*/s/ James E. Tysse*
James E. Tysse

# CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Rules of this Court, Hesai Technology Co., Ltd. and Hesai Inc. provide the following disclosure statement:

Hesai Inc. is a wholly owned subsidiary of Hesai Technology Co., Ltd., which is a wholly owned subsidiary of Hesai Hong Kong Limited, which is a wholly owned subsidiary of Hesai Group. Hesai Group is traded on NASDAQ and the Hong Kong Stock Exchange and has outstanding securities in the hands of the public. There are no other parent companies, subsidiaries, affiliates, or companies which own at least 10% of the stock of Hesai Inc., Hesai Technology Co., Ltd., Hesai Hong Kong Limited, or Hesai Group that have outstanding securities in the hands of the public.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .................................................................................. i

CORPORATE DISCLOSURE STATEMENT ........................................ iii

TABLE OF AUTHORITIES ............................................................ vii

GLOSSARY .................................................................................. xiv

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF ISSUES ............................................................... 1

STATUTES AND REGULATIONS .................................................. 1

INTRODUCTION ........................................................................... 2

STATEMENT OF THE CASE ......................................................... 6

      A.    Statutory Framework ..................................................... 6

      B.    Factual Background ...................................................... 12

            1.    *Hesai's origins, structure, and operations* .......... 12

            2.    *Hesai's LiDAR technology* .................................. 13

      C.    Procedural History ....................................................... 17

            1.    *Defendants list, then de-list, Hesai* ..................... 17

            2.    *Defendants re-list Hesai* .................................... 20

            3.    *Defendants belatedly identify new evidence the Department purportedly considered when listing Hesai* ..................................................... 23

            4.    *The district court grants summary judgment to Defendants* ..................................................... 25

SUMMARY OF ARGUMENT .......................................................... 27

STANDARD OF REVIEW ............................................................... 30

ARGUMENT ........................................................................ 31

I.   THE DEPARTMENT'S CONCLUSION THAT HESAI MEETS THE DEFINITION OF A "CHINESE MILITARY COMPANY" IS UNLAWFUL ........................... 31

    A.   The Department's Finding That Hesai Contributes "To The Chinese Defense Industrial Base" Conflicts With The Statutory Text And Record .......... 32

        *1.   A contributor "to the Chinese defense industrial base" is an entity that affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes.* ............................... 32

        *2.   The Department did not (and could not) find that Hesai affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes.* ........... 37

        *3.   Even under the Department's incorrect construction, the record lacks substantial evidence for Hesai's listing.* ................................. 47

    B.   The Department's Finding That Hesai Resides In A "Military-Civil Fusion Enterprise Zone" Is Arbitrary And Capricious ............................................. 54

II.  THE DEPARTMENT'S VIOLATION OF HESAI'S DUE PROCESS RIGHTS REQUIRES VACATUR OF THE RE-LISTING DECISION ........................................................ 60

    A.   The Department Failed To Provide Hesai Basic Due Process ........................................................ 60

    B.   The District Court's *Sua Sponte* Harmlessness Finding Was Error ................................................... 65

CONCLUSION ................................................................... 70

ADDENDUM

2021 National Defense Authorization Act,  Pub. L. No.
116-283, § 1260H, 134 Stat. 3388, 3965 .................................. Add. 1

# TABLE OF AUTHORITIES

C<small>ASES</small>:

*ACA Int'l v. FCC,*
   885 F.3d 687 (D.C. Cir. 2018) ....................................... 56, 60

*Ark Initiative v. Tidwell,*
   816 F.3d 119 (D.C. Cir. 2016) ........................................... 30

*Associated Builders & Contractors, Inc. v. Herman,*
   166 F.3d 1248 (D.C. Cir. 1999) .......................................... 31

*AT&T Corp. v. FCC,*
   86 F.3d 242 (D.C. Cir. 1996) ........................................ 50, 51

*Calero-Toledo v. Pearson Yacht Leasing Co.,*
   416 U.S. 663 (1974) ..................................................... 64

*Center for Biological Diversity v. United States Forest Serv.,*
   80 F.4th 943 (9th Cir. 2023) ............................................ 36

*David Saxe Prods., LLC v. NLRB,*
   888 F.3d 1305 (D.C. Cir. 2018) .......................................... 50

*Department of Com. v. New York,*
   588 U.S. 752 (2019) ..................................................... 53

*Department of Homeland Sec. v. Regents of the Univ. of Cal.,*
   591 U.S. 1 (2020) ....................................................... 53

*Duncan v. Walker,*
   533 U.S. 167 (2001) ..................................................... 32

*Encino Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016) ..................................................... 49

*Forsyth Mem'l Hosp., Inc. v. Sebelius,*
   639 F.3d 534 (D.C. Cir. 2011) ........................................... 31

*Fuentes v. Shevin,*
   407 U.S. 67 (1972) ...................................................... 64

*Genus Med. Techs. LLC v. FDA*,
  994 F.3d 631 (D.C. Cir. 2021) ............................................ 42

*Goldfarb v. Mayor & City Council of Baltimore*,
  791 F.3d 500 (4th Cir. 2015) ........................................ 33, 34

*Goss v. Lopez*,
  419 U.S. 565 (1975) ........................................................ 63

*Greater Boston Television Corp. v. FCC*,
  444 F.2d 841 (D.C. Cir. 1970) ........................................ 66

*Hikvision USA, Inc. v. FCC*,
  97 F.4th 938 (D.C. Cir. 2024) ........................................ 56

*Iowa v. Wright*,
  154 F.4th 918 (8th Cir. 2025) ........................................ 43

*Judulang v. Holder*,
  65 U.S. 42 (2011) ............................................................ 51

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ........................................................ 31

*Luokung Tech. Corp. v. Department of Def.*,
  538 F. Supp. 3d 174 (D.D.C. 2021) ................................ 9, 10

*Manin v. National Transp. Safety Bd.*,
  627 F.3d 1239 (D.C. Cir. 2011) ...................................... 49

*Marshall Cnty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993) ...................................... 31

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ........................................................ 60

*McLouth Steel Prods. Corp. v. Thomas*,
  838 F.2d 1317 (D.C. Cir. 1988) ...................................... 66

*Morall v. DEA*,
  412 F.3d 165 (D.C. Cir. 2005) ........................................ 50

*Morton v. Ruiz,*
415 U.S. 199 (1974) .................................................................. 55

*National Council of Resistance of Iran v. Department of State,*
251 F.3d 192 (D.C. Cir. 2001) ........................... 6, 60, 61, 62, 66, 67, 68

*Pacific Nw. Newspaper Guild, Loc. 82 v. NLRB,*
877 F.2d 998 (D.C. Cir. 1989) .................................................. 55

*Pearson v. Shalala,*
164 F.3d 650 (D.C. Cir. 1999) .................................................. 56

*People's Mojahedin Org. of Iran v. Department of State,*
613 F.3d 220 (D.C. Cir. 2010) ....................................... 61, 62, 68

*Perrin v. United States,*
444 U.S. 37 (1979) .................................................................. 33

*Royal Brush Mfg., Inc. v. United States,*
75 F.4th 1250 (Fed. Cir. 2023) ................................................ 69

*Sprint Corp. v. FCC,*
315 F.3d 369 (D.C. Cir. 2003) .................................................. 66

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers,*
985 F.3d 1032 (D.C. Cir. 2021) ................................................ 69

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
289 F.3d 89 (D.C. Cir. 2002) ................................................... 68

*Sycamore Indus. Park Assocs. v. Ericsson, Inc.,*
546 F.3d 847 (7th Cir. 2008) .............................................. 33, 34

*SZ DJI Tech. Co., Ltd. v. Department of Def.,*
No. 1:24-cv-02970, 2025 WL 2761210 (D.D.C. Sept. 26, 2025) .................................................................................. 38

*Taylor v. Resolution Tr. Corp.*,
    56 F.3d 1497 (D.C. Cir. 1995) ............................................................ 62
    66 F.3d 1226 (D.C. Cir. 1995) ...................................................... 62, 64

*Trafalgar Cap. Assocs., Inc. v. Cuomo*,
    159 F.3d 21 (1st Cir. 1998) ............................................................... 55

*Trifax Corp. v. District of Columbia*,
    314 F.3d 641 (D.C. Cir. 2003) ...................................................... 63, 64

*Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    437 F.3d 75 (D.C. Cir. 2006) ............................................................ 54

*U.S. Postal Serv. v. Postal Regul. Comm'n*,
    785 F.3d 740 (D.C. Cir. 2015) .......................................................... 56

*Van Buren v. United States*,
    593 U.S. 374 (2021) ........................................................................ 41

*Weyerhaeuser Co. v. Costle*,
    590 F.2d 1011 (D.C. Cir. 1978) ........................................................ 67

*Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*,
    505 U.S. 214 (1992) ........................................................................ 37

*Xiaomi Corp. v. Department of Def.*,
    No. 21-cv-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) ... 9, 10, 41, 42

**S**TATUTES AND **R**EGULATIONS:

5 U.S.C.
    § 702 ............................................................................................... 1

10 U.S.C.
    § 113 note ........................................................................................ 6

28 U.S.C.
    § 1291 ............................................................................................. 1
    § 1331 ............................................................................................. 1

42 U.S.C.
§ 6972(a)(1)(B) ................................................................. 33
§ 18912 ................................................................... 10, 63
§ 19235 ................................................................... 10, 63

50 U.S.C.
§ 4815(d)(3) .................................................................. 35

2021 National Defense Authorization Act,  Pub. L. No. 116-
283, 134 Stat. 3388 ........................................................ 6
§ 1260H(a) ..................................................................... 7
§ 1260H(b)(1) ................................................................. 7
§ 1260H(b)(3) ................................................................. 7
§ 1260H(d)(1)(B)(i) ......................................................... 18
§ 1260H(d)(1)(B)(i)(I) ...................................................... 7
§ 1260H(d)(1)(B)(i)(II) ............................... 7, 32, 35, 54
§ 1260H(d)(1)(B)(ii) ......................................................... 7
§ 1260H(d)(2) ........................................................... 9, 32
§ 1260H(d)(2)(E) ...................................................... 26, 54
§ 1260H(d)(3) ................................................................. 7

Further Consolidated Appropriations Act of 2024, Pub. L.
No. 118-47, 138 Stat. 460 ......................................... 10, 63

Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998) ................. 9

Pub. L. No. 118-31, 137 Stat. 136 (2023) ....................... 10, 63

15 C.F.R.
Pt. 774, Supp. No. 1, ECCN 6A008.j (2025) ................ 16, 43
Pt. 774, Supp. No. 1, ECCN 6A998.b (2025) ................ 16, 43
§ 738.2(d)(1)(i) ............................................................... 39
§ 744.21(a)(2) ................................................................. 39
§ 744.21(f) ..................................................................... 39

22 C.F.R.
§ 121.1, Cat. XII(b)(6) .................................................... 44

86 Fed. Reg. 33,994 (June 28, 2021) ................................. 17

Notice of Designation, 89 Fed. Reg. 86,230-03 (Oct. 29, 2024) ............... 21

Notice of Removal, 89 Fed. Reg. 86,230-02 (Oct. 29, 2024) ................... 20

*Securing the Information and Communications Technology and Services Supply Chain: Connected Vehicles*, 89 Fed. Reg. 79,088 (Sept. 26, 2024) ........................................................ 15, 49

OTHER AUTHORITIES:

Amazon Press Center, *Amazon Web Services Announces Upcoming China Region for its Cloud Computing Platform* (Dec. 18, 2013) .................................................. 58

Autoliv, *Autoliv and Volvo Cars to team up with NVIDIA to develop advanced systems for self-driving cars* ................................. 60

BLACK'S LAW DICTIONARY (12th ed. 2024) .............................................. 33

Brunner, Jordan & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021) .................................... 11, 12, 62

Defense One, *About Defense One* ....... 24, 25, 26, 48, 50, 51, 52, 53, 54, 68

Dep't of Commerce, *Dual Use Export Licenses* ....................................... 41

Dep't of Def., *DOD Dictionary of Military & Associated Terms* (Mar. 2017) ................................................................. 35

FED. R. APP. P. 4(a)(1)(B) .................................................................... 1

GovExec, *About* ...................................................................................... 24

Guanjun, Mao, *12 projects in Jiading Industrial Zone signed contracts, with a total investment of over 4.3 billion yuan*, SHANGGUAN NEWS (Mar. 20, 2023) .................................... 59

Nicastro, Luke A., CONG. RSCH. SERV., *The U.S. Defense Industrial Base: Background and Issues for Congress* (2024) ................................................................. 34, 35, 46

OXFORD DICTIONARY OF ENGLISH (3d ed. 2010) ....................................... 33

OXFORD LEARNER'S DICTIONARY ............................................... 34

Press Release, U.S. Department of Defense (Jan. 31, 2024) ................. 17

Qualcomm, *Joint Innovation Center* ........................................ 58

Razdan, Khushboo, *Hesai's reported removal from Pentagon blacklist draws criticism from Republican senators*, SOUTH CHINA MORNING POST (Aug. 15, 2024) ................................ 20

Sevastopulo, Demetri & Edward White, *China's Hesai to be removed from US defence department blacklist*, FIN. TIMES (Aug. 13, 2024) ................................................... 19

*Shanghai Jiading Industrial Zone develops three 100 billion-level industries*, CHINA WORKERS NETWORK (Feb. 22, 2024) ............. 58

THE MERRIAM-WEBSTER DICTIONARY (4th ed. 2022) ............................. 33

Volvo Autonomous Solutions, *Transforming The Movement Of Goods* ................................................................. 59

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Department | Department of Defense |
| Hesai | Hesai Technology Co., Ltd. and Hesai Inc. |
| Section 1237 | Section 1237 of the 1999 National Defense Authorization Act |
| Section 1260H | Section 1260H of the National Defense Authorization Act for FY2021 |

# JURISDICTIONAL STATEMENT

The district court entered final judgment on July 11, 2025. Hesai timely filed a notice of appeal on July 13, 2025. *See* FED. R. APP. P. 4(a)(1)(B). The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

**I.** Whether the Department of Defense violated the APA in designating Hesai as a "Chinese military company."

**II.** Whether the Department of Defense violated Hesai's rights under the Due Process Clause by re-designating Hesai as a "Chinese military company" without first providing notice of the Department's decision, the materials on which the Department proposed to rely, or an opportunity to rebut the Department's evidence.

# STATUTES AND REGULATIONS

Applicable statutory provisions are contained in the Addendum bound with this brief.

# INTRODUCTION

This case is about whether the Department of Defense acted lawfully in adding a publicly traded supplier of commercial automobile sensors to a list of "Chinese military compan[ies]" on the ground that it "contribut[es] to the Chinese defense industrial base"—even though the Department undisputedly lacks a shred of evidence that the company has ever contributed to the Chinese military (or any other).

Plaintiff Hesai, a NASDAQ-listed company, is a global leader in 3D sensing technology for passenger and commercial vehicles. The company—which derives its name from a phonetic play on its founding location, San Jose, California—does not supply its technology to any military, much less the Chinese military. Its U.S.-educated founders and leadership team are firmly committed to supplying the world's automobile companies with affordable, safe, and reliable anti-crash technology, and are strongly opposed to military uses of their products. In keeping with Hesai's passenger- and commercial-vehicle focus, the company has instituted robust safeguards to prevent improper diversion of its products to any military or defense use.

Yet, in early 2024, without warning or explanation, the U.S. Department of Defense inexplicably tarred Hesai as a "Chinese military company" under Section 1260H of the National Defense Authorization Act for FY2021. After Hesai challenged the decision in court and outlined its many defects, the Department rescinded the listing—only to issue an amended designation on a new record (following political pressure driven by Hesai's U.S. competitors). But the Department's latest results-oriented decision, which still cannot find a single connection between Hesai and the Chinese military or defense industrial base, is just as flawed as its first.

As relevant here, the governing statute defines a "Chinese military company" as an entity that is either (i) owned, controlled, or acting as an agent of "the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party," or (ii) "a military-civil fusion contributor to the Chinese defense industrial base." The Department did not make the first finding (that Hesai is owned or controlled by the Chinese military). Instead, the Department contends that Hesai is "a military-civil fusion contributor to the Chinese defense industrial base," and thus a "Chinese

military company," solely because Hesai supposedly manufactures "dual-use" products—*i.e.*, products that purportedly can be used by both commercial and military entities.

That absurdly broad reading of Section 1260H is wrong.  It conflicts with the ordinary understanding of the phrase "contributor to the Chinese defense industrial base," which means an entity that affirmatively assists or supplies the Chinese government (directly or indirectly) with materials, products, or services for defense purposes— something Hesai undisputedly does not do and has never done.  The government's expansive reading also sweeps any technology company (and most other types of companies) within Section 1260H's ambit.  It thus gives the Department virtually unfettered discretion to blacklist virtually any company with a Chinese presence that the agency chooses—including many well-known U.S. and international companies lacking any meaningful connection to the military.  Congress could not have intended to confer such unbounded authority.

In any event, Hesai does not satisfy even the Department's overbroad reading.  Despite having the vast resources of the Pentagon at its disposal, the Department offered no research studies, expert analysis,

classified information, interagency discussions, public comment, or the like to factually justify its conclusion that Hesai's LiDAR is a "dual-use" product with "substantial" military uses. On the contrary, uncontradicted record evidence shows that Hesai's technology is neither intended nor designed for any military purposes. The U.S. government's official position confirms the point: the Department of Commerce imposes no special export restrictions on Hesai's products. Instead, it treats them the same as most commercial and consumer goods.

In nevertheless granting summary judgment for the Department, the district court adopted a capacious view of the Department's listing authority and a cramped view of Hesai's obvious prejudice. Despite purporting to narrow the government's flawed interpretation of Section 1260H, the court effectively adopted it. The court then misapplied that standard to the record, relying primarily on an online magazine article that, in the court's own words, was "perplexing[ly]" omitted from the Amended Designation and its accompanying administrative record. And the court brushed aside the Department's flagrant disregard of Hesai's due process rights because it concluded incorrectly—and *sua sponte*— that any violation was "harmless." In doing so, it ignored this Court's

plain admonition in the redesignation context that courts "cannot presume" that a challenging party could not "have offered evidence which might have either changed the [agency's] mind or affected the adequacy of the record." *National Council of Resistance of Iran v. Department of State* ("*NCRI*"), 251 F.3d 192, 209 (D.C. Cir. 2001). This Court should reverse the district court's decision and vacate the Department's unlawful listing.

## STATEMENT OF THE CASE

### A. Statutory Framework

**1.** Section 1260H of the 2021 National Defense Authorization Act, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965,[1] directs the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions,

---

[1] Section 1260H is codified at 10 U.S.C. § 113 note. For ease of reference, this brief cites to the original public law provision. Although Congress amended Section 1260H in December 2024, all agree that the original statutory language governs the Department's September 2024 re-designation of Hesai. This brief's references to Section 1260H therefore refer to that pre-amendment text (which, in any event, is substantially identical to the provisions of the amended statute relevant to this appeal).

that is a Chinese military company." § 1260H(a).  The Secretary must update the list annually, § 1260H(b)(1), as well as "make additions or deletions *** on an ongoing basis based on the latest information available," § 1260H(b)(3).

Section 1260H defines a "Chinese military company" as an entity that is "engaged in providing commercial services, manufacturing, producing, or exporting," § 1260H(d)(1)(B)(ii), and that is connected to the Chinese military in one of two ways.  The first encompasses any entity owned, controlled, or acting as an agent of "the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party." § 1260H(d)(1)(B)(i)(I); *see* § 1260H(d)(3) (defining People's Liberation Army).  No one contends that Hesai falls into that category.

The second type of "Chinese military company" is an entity "identified as a [1] military-civil fusion contributor [2] to the Chinese defense industrial base." § 1260H(d)(1)(B)(i)(II).  Congress did not define the second prong, *i.e.*, what it means to contribute "to the Chinese defense industrial base."  But Congress explicitly defined a "military-civil fusion

contributor" to cover entities that fit into eight enumerated subcategories:

(A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

§ 1260H(d)(2).

**2.** The enactment of Section 1260H is not the first time Congress directed the Department to create a list of "Chinese military companies." Under Section 1260H's now-defunct predecessor statute, Section 1237 of the 1999 National Defense Authorization Act, Congress required the Department to compile a list of "Communist Chinese military companies" the Secretary determined were "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," or "owned or controlled by, or affiliated with, the [PLA] or a ministry of the government of the People's Republic of China," among other requirements. Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998).

"Section 1237's [Communist Chinese Military Company] designation authority went unused for almost twenty years," *Luokung Tech. Corp. v. Department of Def.*, 538 F. Supp. 3d 174, 195 n.15 (D.D.C. 2021), until a "flurry" of companies were added to the list in 2020 and 2021, *Xiaomi Corp. v. Department of Def.*, No. 21-cv-280, 2021 WL 950144, at *12 (D.D.C. Mar. 12, 2021). But it quickly became apparent that the Department's "designation process *** was deeply flawed and

failed to adhere to several different [APA] requirements." *Xiaomi,* 2021 WL 950144, at *8.  Judge Contreras twice enjoined the placement of companies on the 1237 List because the Department failed to "adequately explain[] the basis for its decision," acted "in violation of [its] limited grant of statutory authority," and "lack[ed] the substantial evidentiary support required under the APA." *Id.* at *4-8; *see Luokung*, 538 F. Supp. 3d at 191 (same).  The court also noted "serious concerns" about whether the Department had afforded the companies "constitutional due process" in listing them without notice or opportunity to object. *Xiaomi*, 2021 WL 950144, at *8 n.8; *see Luokung*, 538 F. Supp. 3d at 191 n.13.  The Department declined to appeal, and it subsequently removed both entities from the 1237 List.

**3.**  Congress has imposed various restrictions on 1260H-listed entities. *See* JA001406 (ECF No. 60, at 4).  Most prominently, entities on the 1260H List may not sell goods to the Department beginning in 2026. *See* Pub. L. No. 118-31, § 805, 137 Stat. 136, 315 (2023).  Congress has also barred listed entities from receiving a range of government benefits. *See, e.g.*, 42 U.S.C. §§ 18912, 19235 (restricting listed entities from accessing grants, loans, contracts, and other benefits); Further

Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 ("No Federal funds made available to the Department of Homeland Security may be used to enter into a procurement contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or guarantee to, any entity identified under section 1260H[.]").

Beyond those specific legal impediments, a listing under Section 1260H is intended to—and does—impose severe reputational harm. As commentators have observed, "Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237," but with a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state broadly." Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021). [2] Congress directed this "more precise" designation strategy through "Section 1260H's narrow and tailored language," including a

---

[2] https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors (all cited websites last visited Dec. 1, 2025).

"new definition of a ['Chinese military company' that] is significantly narrower than the old definition of [a 'Communist Chinese military company'] under Section 1237." *Id.*

## B. Factual Background

### 1. *Hesai's origins, structure, and operations*

Hesai was started in 2013 in San Jose, California, by three Chinese entrepreneurs who were educated at the University of Illinois at Urbana-Champaign and Stanford University. They chose the name "Hesai," a phonetic translation of "Jose" in Chinese, to honor the company's American roots.

In 2014, the co-founders moved to Shanghai and formally incorporated Hesai Technology Co., Ltd., which later established California-based Hesai Inc. to serve as its primary sales platform in America. JA000518-519 (NDAR387-388). Hesai's parent company, Hesai Group, has been publicly traded on NASDAQ under the ticker symbol HSAI since February 2023. JA000503 (NDAR372). That public listing requires Hesai to provide consistent transparency about its governance, operations, and products, as regularly confirmed by

securities counsel, reviewed by U.S. auditors, and scrutinized by the investing public.

Hesai is fully committed to independence from government control by any country, including China. JA000506 (NDAR375). As a publicly traded company, Hesai Group is responsible to its Board, which does not include any person affiliated with the Chinese military. JA000510 (NDAR379). Neither the Chinese government nor the People's Liberation Army—nor any sub-entity operating subject to the direction of the government or military—has any "golden" share or veto right over the company's decision-making. JA000503 (NDAR372). Instead, at the time of the listing, Hesai's founders maintained a 23% ownership stake and held super-voting shares that confer 75% of the voting power and control over the company's strategic decisions (both percentages have since decreased slightly). *Id.* The remaining shares are owned by institutional, retail, and commercial investors, including from the United States and other Western countries. *Id.*

## 2. *Hesai's LiDAR technology*

Hesai is a global technology company that develops, manufactures, and sells LiDAR products for passenger and commercial vehicles. LiDAR

is a remote sensing technology that measures distances and generates real-time 3D maps of an object's physical surroundings. It is a critical safety component of autonomous and assisted-driving systems, like a modern airbag or seatbelt, intended to supplement on-board cameras and prevent collisions. *See* JA000504 (NDAR373).

Hesai is an industry leader, with many household-name U.S., European, and international automobile companies as customers. Many of the world's top autonomous driving companies have used Hesai's technology as their primary LiDAR solution. JA000504 (NDAR373).

Notably, Hesai's LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates. JA000504-506 (NDAR373-375); JA000520 (NDAR389). The uncontradicted record also shows that they cannot store even a second of any image they generate, or wirelessly transmit any data. *Id.* Rather, all data is transmitted only to the vehicle's onboard computer via a one-way secure cable, ensuring the data cannot be accessed (by Hesai or any third party) outside of the vehicle in which it operates. *Id.* These privacy safeguards and cybersecurity protections have been certified by international, independent, expert testing organizations. *Id.; see also*

*Securing the Information and Communications Technology and Services Supply Chain: Connected Vehicles*, 89 Fed. Reg. 79,088, 79,092 (Sept. 26, 2024) (Department of Commerce's "technical analysis found that LiDAR generally lacks the ability to transmit from the vehicle").

Hesai's products are also strictly designed and manufactured at civilian specifications. ECF No. 17, at 10-11; JA000506 (NDAR375); JA000521 (NDAR390). This ensures Hesai can sell its products at competitive prices in the consumer market, given that they are designed to be placed on millions of passenger and commercial vehicles. It also means Hesai's products are significantly below the battlefield standards of any military, which require specialized, higher-powered technology. JA001394 (NDAR1709). For example, Hesai's products are not designed to meet military standards for internal component temperature range, vibration/shock endurance, or radiation resistance. *Id.*

That Hesai makes competitively priced components for mass-market passenger and commercial vehicles is presumably why the U.S. Department of Commerce has classified all of Hesai's products as "EAR99"—the category used for most commercial and consumer goods that generally requires no license for exports (*i.e.*, absent export to an

embargoed country, to a prohibited end-user, or for a prohibited end-use). JA000506 (NDAR375); JA000521 (NDAR390).[3] Hesai's products are not covered by the Chinese government's list of sensitive or strategic technologies restricted from export from that country, either. JA001394 (NDAR1709).

Hesai is also dedicated to preventing the improper use or resale of its products, including for any military purpose. JA000506 (NDAR375); JA000521 (NDAR390). Hesai not only designs and manufactures its products only to civilian specifications, but also does not sell its LiDAR equipment to any military. *Id.* In fact, Hesai does everything it can to ensure that its technology is not transferred or diverted to military entities (Chinese or otherwise). *Id.* It employs a carefully designed customer-screening process, established with the assistance of U.S.

_____

[3] Notably, the subset of LiDAR products that the U.S. government has deemed to be sensitive technologies requiring export licenses for most destinations have specifications that far exceed Hesai's capabilities. *See* 15 C.F.R. Pt. 774, Supp. No. 1, ECCN 6A008.j and 6A998.b (2025), https://www.ecfr.gov/current/title-15/subtitle-B/chapter-VII/subchapter-C/part-774/appendix-Supplement%20No.%201%20to%20Part%20774 (restricting "[s]pace-qualified" LiDAR, certain LiDAR employing "coherent heterodyne or homodyne detection techniques," and certain LiDAR designed for "airborne bathymetric littoral surveys").

counsel, to help ensure that the company does not sell its products to any entities on any list of prohibited and restricted parties maintained by the U.S. government (including the Military End User List, the Entity List, the Specially Designated Nationals and Blocked Persons List, etc.), or to any entity subject to U.S., E.U., U.K., or U.N. blocking measures. *Id.* In addition, Hesai's standard sales agreement with new customers prohibits the re-sale of Hesai's LiDAR equipment to any military or for any military end-use. ECF No. 17, at 10.

### C. Procedural History

#### 1. *Defendants list, then de-list, Hesai.*

On June 28, 2021, the Department published the initial 1260H List, designating various entities as "Chinese military companies" for the first time. 86 Fed. Reg. 33,994 (June 28, 2021). Hesai did not appear on that List.

On January 31, 2024, the Department released an updated 1260H List via press release, which designated Hesai Technology Co., Ltd. as a "Chinese military compan[y]" for the first time.[4] The Department gave

---

[4] Press Release, U.S. Department of Defense (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-

Hesai no prior notice or opportunity to be heard.  JA000507 (NDAR376), JA000524 (NDAR393).   The listing followed a sustained, malicious lobbying campaign by Hesai's main U.S. competitors to falsely smear Hesai as a Chinese military company.  JA000507 (NDAR376), JA000521-522 (NDAR390-391).

In a good-faith effort to cooperate and avoid litigation, counsel for Hesai repeatedly asked the Department for the legal and factual basis for Hesai's listing so that it could correct the misunderstanding.  *E.g.*, JA000502 (NDAR371).  Hesai also submitted detailed information to the Department in March and April 2024, refuting that the company is a Chinese military company under any Section 1260H(d)(1)(B)(i) criteria. JA000502-526 (NDAR371-395); JA001390-1395 (NDAR1705-1710).  But the Department provided no substantive response.

Given its ongoing harm and the Department's refusal to share the basis for the listing, Hesai had no choice but to challenge the listing in court.  Only after Hesai filed suit did the Department eventually share its listing memorandum ("Original Designation").   JA000030-000038

releases-list-of-peoples-republic-of-china-prc-military-companies-in-accord/.

(AR9-17). Despite finding that Hesai's products "enable a broad spectrum of applications across *passenger or commercial* vehicles," JA000033 (AR12) (emphasis added), the Department determined that "Hesai is a military-civil fusion contributor to the Chinese defense industrial base," because it supposedly was "affiliated" with "the Chinese Ministry of Industry and Information Technology," the primary Chinese agency overseeing technology and commerce. *Id.* The Department did not make a separate finding that Hesai contributes to the Chinese defense industrial base.

Amidst expedited summary judgment briefing, the Financial Times reported that the Pentagon had decided to de-list Hesai as a Chinese military company because government lawyers "were concerned that the rationale for [the company's] inclusion would not be up to legal scrutiny under the criteria outlined in the 2021 [NDAA] legislation." Demetri Sevastopulo & Edward White, *China's Hesai to be removed from US defence department blacklist*, FIN. TIMES (Aug. 13, 2024);[5] JA000066 (ECF No. 41, ¶ 67). That leaked determination prompted backlash from politicians representing the states where Hesai's U.S. competitors are

_____

[5] https://www.ft.com/content/97dff7c2-33e9-4729-a059-968e308cac49.

located, who publicly "called on the Pentagon to 'immediately reverse the decision.'" Khushboo Razdan, *Hesai's reported removal from Pentagon blacklist draws criticism from Republican senators*, SOUTH CHINA MORNING POST (Aug. 15, 2024);[6] JA000066 (ECF No. 41, ¶ 68).

On the eve of the long-scheduled summary judgment hearing, Defendants requested a three-week postponement so that the Department could "make a new decision regarding Hesai's placement on the Section 1260H list" that would "render the original determination inoperative." ECF No. 30. On October 15, 2024, the Department rescinded Hesai's Section 1260H designation and de-listed the company.

### 2. Defendants re-list Hesai.

The same day that the Department de-listed Hesai, however, the Department immediately *re-listed* the company—once again, without giving Hesai any advance notice or opportunity to respond. JA000066 (ECF No. 41, ¶ 70). The de-listing and re-listing determinations were published on October 29, 2024. Notice of Removal, 89 Fed. Reg. 86,230-

---

[6] https://finance.yahoo.com/news/hesais-reported-removal-pentagon-blacklist-093000017.html.

02 (Oct. 29, 2024); Notice of Designation, 89 Fed. Reg. 86,230-03 (Oct. 29, 2024); *see* JA000145 (NDAR5).

The Department's new decision memorandum ("Amended Designation") makes no finding that Hesai is owned or controlled by the Chinese military or any other military-related body. JA000146-164 (NDAR6-24). Instead, the Amended Designation determines that Hesai is a "Chinese military company" because it is a "military-civil fusion contributor to the Chinese defense industrial base." JA000150 (NDAR10). The Department determined that Hesai is a "military-civil fusion contributor" for four reasons—including, as relevant to this appeal, that Hesai allegedly "resides in or is affiliated with military-civil fusion enterprise zones." *Id.*[7]

In addition, the Amended Designation (for the first time) found that Hesai "contributes to the Chinese defense industrial base through its

---

[7] The other three grounds are that Hesai allegedly (1) is "affiliated with the Ministry of Industry and Information Technology," (2) "receives assistance from the Government of China through science and technology efforts initiated under the Chinese military industrial planning apparatus," and (3) has "products [that] are advertised on a nongovernmental military equipment procurement platform." JA000149 (NDAR10). Hesai contested each of these grounds, but the district court did not reach them.

development of LiDAR products which are used in military equipment." JA000151 (NDAR11). The Department based that conclusion entirely on the supposed "dual-use" (*i.e.*, civilian and military use) nature of LiDAR technology generally. *Id.*

Yet for the key proposition that "Hesai Group's LiDAR products also have military applications" (in addition to "applications across passenger and commercial vehicles"), JA000149 (NDAR9), the Amended Designation provided, in the district court's words, only "minimal support." JA001431 (ECF No. 60, at 29). First, it cited Hesai's profile in Pitchbook (a commercial database of companies), which unsurprisingly makes no mention whatsoever of the word "military" or any military uses for Hesai's products. JA000149 (NDAR9); JA000159 (NDAR19 n.4); *see* JA000165-201 (NDAR41-77). Second, it cited an obscure website called "AZoOptics.com," part of the "AZo Network," which advertises itself to private companies as a way to "[c]onnect your brand" through a "precision-targeted digital marketing platform that drives measurable results." ECF No. 42, at 22 & n.9; *see* JA000151 (NDAR11); JA000160 (NDAR20 n.14). The post in question was "authored" and "[s]ponsored by Avantier Inc.," a private "optical innovations" company based in New

Jersey. JA000527-530 (NDAR396-399). That source does not mention the words "Hesai" or "China" even once. And its sole use of the word "military" refers to "Er-doped fiber 1550 nm lasers," JA000528 (NDAR397)—a product Hesai is not even alleged to (and does not) manufacture.

3. *Defendants belatedly identify new evidence the Department purportedly considered when listing Hesai.*

Hesai filed a renewed motion for summary judgment, pointing out that the agency's record was woefully devoid of competent evidence to support its crucial finding that Hesai contributes "to the defense industrial base." ECF No. 42.

Weeks later—and on the eve of Defendants' deadline for filing their combined opposition and cross-motion—Defendants' counsel notified Hesai that the Department had discovered an article it had "directly or indirectly" considered when re-listing Hesai, yet neglected to cite anywhere in the Amended Designation (or mention to anyone). JA000132 (ECF No. 45-2, at 2). The article, published just 14 days before the Amended Designation became final, was not included in the administrative record certified as "true, correct, and complete" following the re-listing, JA000047 (ECF No. 40-2, at 2), was not produced before

Hesai filed its summary judgment brief, and was omitted from the Amended Designation and record due to a vague "administrative error." JA000124 (ECF No. 45). The article—a "commentary" from "Defense One" (which describes itself as a "leading sales and marketing intelligence company"[8])—is mainly about China's "quest for autonomous vehicles," and identifies LIDAR as "the main 'eyes' for self-driving vehicles and driver assistance systems." JA001399 (NDAR1714). The article's only relevant references to Hesai are the Department's own initial listing of the company and a reference to an outdated connection between Hesai and another Chinese technology company. JA001400 (NDAR1715).

Despite never appearing in the Amended Designation, Defendants' cross-motion and opposition brief depended *exclusively* on the Defense One article (cited more than half a dozen times) for the Department's key finding that Hesai's LiDAR products are purportedly "dual-use" in nature, and thus represent a contribution to the Chinese defense

---

[8] Defense One, *About Defense One*, https://www.defenseone.com/about/?oref=d1-nav; GovExec, *About*, https://about.govexec.com/company/about/.

industrial base.  At a hearing on the parties' cross-motions, Defendants' counsel confirmed that it had no evidence "other than the Defense One Article" that "suggests that Hesai contributes to the Chinese defense [industrial] base."  JA001432-1433 (ECF No. 60, at 30-31).

### 4. The district court grants summary judgment to Defendants.

On July 11, 2025, the district court denied Hesai's motion for summary judgment and granted Defendants' cross-motion.  According to the court, the Department had proffered sufficient evidence that Hesai both "contributes 'to the Chinese defense industrial base'" and "meets the [statutory] definition of 'military-civil fusion contributor.'"  JA001420, JA001435 (ECF No. 60, at 18, 33).

The district court agreed with Hesai that interpreting a contribution "to the Chinese defense industrial base" to cover any "entity [that] produces a 'dual-use' product" would be "an overly broad reading of the statute," JA001427 (ECF No. 60, at 25), and was "persuaded by the argument that the DoD must *** be required to find that a particular entity has a meaningful connection to the Chinese military before the DoD can list the entity as a 'Chinese military company.'"  JA001419 (*id.* at 17).  But the court nonetheless concluded that an entity "contributes

'to the Chinese defense industrial base'" so long as its "dual-use" product has "substantial military application."  JA001428 (*id.* at 26).  In the court's view, the late-disclosed Defense One article's discussion of LiDAR generally, combined with various rationales and sources on which the Department had not specifically relied in reaching its conclusion, are "likely sufficient" to support the Department's finding that Hesai's LiDAR has "substantial military application."  JA001434 (*id.* at 32).

As for the Department's conclusion that Hesai is a "military-civil fusion contributor," the district court considered and accepted one statutory basis: that "Hesai is an entity 'residing in or affiliated with a military-civil fusion enterprise zone.'"  JA001416 (ECF No. 60, at 14); *see also* § 1260H(d)(2)(E).  According to the court, it was enough for the Department to point to evidence that Hesai has built or plans to build development centers in areas that a "regional" government office or official has promoted using the phrase "military-civil fusion," even though numerous consumer-facing American companies operate in the same areas.  JA001416-1418 (ECF No. 60, at 14-16).

Finally, the district court rejected Hesai's due process argument— not because the court concluded Hesai received adequate process, but

solely based on the court's *sua sponte* finding that Hesai supposedly "failed to show that it was prejudiced." JA001440-1441 (ECF No. 60, at 38-39).

## SUMMARY OF ARGUMENT

**I.** The Department's designation of Hesai as a "Chinese military company" conflicts with the plain meaning of the statutory text and the record evidence.

**A.** The Department based its designation on a finding that Hesai is a "military-civil fusion contributor to the Chinese defense industrial base." But the Department's finding rests on a fundamentally flawed interpretation of what it means to "contribut[e] to the Chinese defense industrial base." Based on that phrase's ordinary meaning, an entity contributes to the Chinese defense industrial base only if it affirmatively assists or supplies the Chinese government (directly or indirectly) with materials, products, or services for defense purposes. The Department has never said that Hesai does so—nor could it. Hesai sells only *commercial*-grade LiDAR on the *commercial* market for use in *commercial* applications. Hesai does not develop, sell, or otherwise

supply its LiDAR (directly or indirectly) to the Chinese military or defense industrial base; its LiDAR is not even military grade.

The Department never disputed those facts. It instead found that Hesai "contributes to the Chinese defense industrial base" solely because LiDAR generally "can" have "substantial applications in the civilian and military sectors." That open-ended "dual use" construction—which the district court effectively adopted—cannot be squared with the plain meaning of the statutory text. Manufacturing a product that a military could *hypothetically* use cannot constitute *contributing* to military or defense efforts; otherwise, manufacturing virtually any product, from canned food to batteries to automobiles, would qualify.

In any event, the record evidence does not support the Department's finding that the type of mass-market LiDAR Hesai makes, let alone Hesai's products specifically, have "substantial" military "applications." The only evidence Defendants pointed to below was the late-produced online magazine article, perplexingly omitted from the Amended Designation or administrative record, that barely mentions Hesai at all (and that the district court should not even have considered). In nevertheless finding the Department's conclusion supported by

substantial evidence, the district court (like Defendants) ignored record facts that weigh against it.

**B.**     The Department's determination that Hesai qualified as a "military-civil fusion contributor" because Hesai "resides in" or is "affiliated with a military-civil fusion enterprise zone" was utterly arbitrary.  The Amended Designation gives no explanation for what a "military-civil fusion enterprise zone" is; it simply lists random facts and declares the standard satisfied.

Hesai does not even meet DOJ counsel's made-for-litigation definition: any "section of territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion through economic activity."  The sole evidence relied on—a set of cherry-picked, Google-translated promotional statements from obscure "regional" officials—does not show that the territories in question were "established" to advance "military-civil fusion."  If they were, thousands of well-known, consumer-facing companies located there would qualify, too.

**II.**     This Court should vacate the Department's re-listing decision for an independent reason:  the Department flagrantly violated Hesai's

due process rights. This Court's precedent establishes that, in the context of a redesignation to a U.S. "sanctions" list, the government must provide an entity with: (i) notice prior to the relisting (or denial of a petition for removal); (ii) the unclassified material upon which the government proposes to rely; and (iii) an opportunity to rebut the administrative record or otherwise negate the proposition that the entity should remain listed. The Department undisputedly never offered Hesai any of these protections.

In nevertheless rejecting Hesai's due-process challenge, the district court concluded *sua sponte* that any violation of Hesai's due process rights was harmless. But the government forfeited that argument, and for good reason: this Court has rejected "harmless error" arguments in indistinguishable circumstances. Contrary to what the district court held below, courts "cannot presume" that a sanctioned entity could not have offered evidence that might have changed the agency's mind. So a due process violation in this context cannot be harmless.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *See Ark Initiative v. Tidwell*, 816 F.3d 119, 126-127 (D.C. Cir.

2016). "In a case like the instant one, in which the District Court reviewed an agency action under the [APA]," this Court "review[s] the administrative action directly" and "accord[s] no particular deference to the judgment of the District Court." *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1254 (D.C. Cir. 1999); *see Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("[W]hen an agency action is challenged[,] [t]he entire case on review is a question of law."). Thus, this Court's "task is the same as that performed by the district judge," *i.e.*, to "review the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence," *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 639 F.3d 534, 537 (D.C. Cir. 2011), and to evaluate whether the agency's interpretation is the "best reading of the statute," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024).

## ARGUMENT

## I. THE DEPARTMENT'S CONCLUSION THAT HESAI MEETS THE DEFINITION OF A "CHINESE MILITARY COMPANY" IS UNLAWFUL

The Department designated Hesai as a "Chinese military company" because it allegedly is a "[1] military-civil fusion contributor [2] to the

Chinese defense industrial base[.]" § 1260H(d)(1)(B)(i)(II). Hesai does not meet either requirement.

## A. The Department's Finding That Hesai Contributes "To The Chinese Defense Industrial Base" Conflicts With The Statutory Text And Record

### 1. A contributor "to the Chinese defense industrial base" is an entity that affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes.

Congress defined a "Chinese military company" as a "[1] military-civil fusion contributor [2] to the Chinese defense industrial base." § 1260H(d)(1)(B)(i)(II). Congress specifically defined the first requirement. § 1260H(d)(2) ("The term 'military-civil fusion contributor' includes *** [.]"). But Congress did not define the second part, *i.e.*, what it means for a company to "contribut[e] to the Chinese defense industrial base." As the district court held, established principles of statutory construction require giving that term "independent meaning," apart from "military-civil fusion contributor," to avoid "omit[ting] half of the statutory text." JA001422 (ECF No. 60, at 20); *see Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining "duty" to "give effect, if possible, to every clause and word of a statute" so no term is rendered "superfluous" (internal quotation marks and citations omitted)). So "the words will be

interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

"Contributor" means "a causal factor in the existence or occurrence of something." *Contributor*, OXFORD DICTIONARY OF ENGLISH 379 (3d ed. 2010). Similarly, to "contribute" means "to give along with others (as to a fund); *also*: HELP, ASSIST." *Contribute*, THE MERRIAM-WEBSTER DICTIONARY 160 (4th ed. 2022); *see also Contribution*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Something that one gives or does in order to help an endeavor be successful"). Consistent with those dictionary definitions, courts regularly interpret the term "contribute" to require at least some "affirmative" or "active" involvement. *See, e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 516 (4th Cir. 2015); *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008). For example, in *Sycamore*, the plaintiff had to show that the defendant "has contributed or *** is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 546 F.3d at 853 (quoting 42 U.S.C. § 6972(a)(1)(B)). The Seventh Circuit explained that, "[b]y

definition, the phrase 'has contributed or is contributing' requires affirmative action." *Id.* at 854. Thus, the plaintiff's allegation that the defendant had "le[ft] equipment that [wa]s insulated by asbestos in place"—*i.e.*, "merely passive conduct"—was insufficient "as a matter of law." *Id.*; *see also Goldfarb*, 791 F.3d at 516 ("contribute" requires "active conduct *** rather than passive connection").

Section 1260H also requires a company to contribute "to" a specific thing: the "Chinese defense industrial base." *See* OXFORD LEARNER'S DICTIONARY ("to" is a preposition "used to show the person or thing that receives something"). Although undefined in the statute, in the U.S. context the term "defense industrial base" commonly refers to "organizations, facilities, and resources that supply the U.S. government—principally, but not exclusively, the Department of Defense (DOD)—with materials, products, and services for defense purposes." Luke A. Nicastro, CONG. RSCH. SERV., *The U.S. Defense Industrial Base: Background and Issues for Congress* (2024), at 1 ("CRS Report");[9] *see id.* (explaining this is the meaning "Congress, the executive branch, think

---

[9] https://www.congress.gov/crs_external_products/R/PDF/R47751/R47751.5.pdf.

tanks, and media outlets frequently employ," which typically involves a "contractual relationship with the government" and private parties).  For example, statutory references to the "United States defense industrial base" concern acquisition or funding by the U.S. government for the "production of an item" that "advance[s] *** the national security of the United States."  50 U.S.C. § 4815(d)(3).  The Department itself has similarly defined the term in reference to entities "with capabilities to perform research and development, design, produce, and maintain *military* weapon systems, subsystems, components, or parts *to meet military requirements*."  Dep't of Def., *DOD Dictionary of Military & Associated Terms* 64 (Mar. 2017) (emphases added).[10]

Read together, an entity "contribut[es] to the Chinese defense industrial base," § 1260H(d)(1)(B)(i)(II), if it affirmatively assists or supplies "the [Chinese] government—principally, but not exclusively, the [Chinese military]—with materials, products, and services for defense purposes," CRS Report at 1.  That is consistent with the Department's original position below—before its re-listing do-over—that "[t]he

---

[10] https://apps.dtic.mil/sti/pdfs/AD1029823.pdf.

straightforward reading" of the relevant statutory section "demands that an entity be a contributor *to the Chinese military* that also has civil/commercial purposes." ECF No. 23, at 18 (emphasis added). Such affirmative contributions—which may be direct or indirect—might entail developing products for the Chinese military, selling goods to Chinese military contractors, or otherwise producing goods or services intending or knowing that they will be used by the Chinese government for defense purposes.

But merely being involved in a high-tech sector, manufacturing a consumer product that *could* be diverted or modified for some undefined military use, or being supposedly "capabl[e]" of assisting the military is not enough. *Compare* JA001428-1429 (ECF No. 60, at 26-27), *with Center for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 953-955 (9th Cir. 2023) (holding that the "hypothetical" ability to contribute is not enough to show someone has, in fact, "contributed"). Were it otherwise, essentially any American technology company (and most other companies) would be considered part of the "U.S. defense industrial base" because they produce (or are simply "capable" of producing) materials, products, or services that hypothetically could be used by the military—

even if they have zero connection to the military or defense sector. The notion that hypothetical "contributions" are not enough is reinforced by the "venerable maxim *de minimis non curat lex* ('the law cares not for trifles')" that forms "the established background of legal principles against which all enactments are adopted." *Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992).

In sum, to be considered a "contributor to the Chinese defense industrial base," an entity must actively or affirmatively—not passively or incidentally—supply the Chinese government with materials, products, or services for defense purposes.

   2.   *The Department did not (and could not) find that Hesai affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes.*

a.   The Department made no finding that Hesai affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes. For good reason: no such evidence exists.

As explained above, Hesai does not sell or supply (even indirectly) products to the Chinese military or other government entities engaged in Chinese defense efforts; instead, as the Department itself acknowledged, Hesai "supplies LiDAR sensors for use in commercial vehicles."

JA000157 (NDAR17); *see supra*, pp. 13-15.   In fact, the uncontested record shows that Hesai's products are not even military grade.   As explained in a sworn declaration submitted to the Department (but ignored by the Amended Designation), Hesai's products are made to commercial, not military, specifications, which ensures they are affordable for mass-market automobile installation.   ECF No. 17, at 11; JA000521 (NDAR390).

Hesai also takes active steps to prevent any improper sale or use of its products, including by the military or for military purposes.  As again detailed for the Department (but again ignored by the Amended Designation), the company's standard sales agreement with new customers prohibits the resale of Hesai's LiDAR equipment to the military.  ECF No. 17, at 10.  The Department does not even allege that (and Hesai is not aware of any instance in which) any country's military has used its products—unlike the products of other companies that have been listed under section 1260H.   *Cf. SZ DJI Tech. Co., Ltd. v. Department of Def.*, No. 1:24-cv-02970, 2025 WL 2761210, at *16 (D.D.C. Sept. 26, 2025) (finding "ample evidence" that listed Chinese drone company contributes to the Chinese defense industrial base where the

company "acknowledges that its technology can [be] *and is* used in military conflict" (emphasis added)).

All of that presumably explains why the Department of Commerce has never placed any special export restrictions on Hesai's products, and instead classifies them the same way as "a majority of commercial products." JA000506 (NDAR375); JA000523 (NDAR392). In other words, Commerce has deemed Hesai's products suitable for export *without* the strict limitations that apply to the export of items Commerce has determined "support[] or contribute[] to the operation, installation, maintenance, repair, overhaul, refurbishing, 'development,' or 'production,' of military items," 15 C.F.R. § 744.21(a)(2), (f), or otherwise should be "controlled" for "national security" reasons, *id.* § 738.2(d)(1)(i). That is a telling indication that the government does not believe Hesai's technology is contributing to anyone's military efforts.

At bottom, there is simply no basis to conclude (and the Department has not even alleged) that Hesai or its commercial technology affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes.

*b.*     Unable to establish that Hesai meets the standard Congress intended, the Department applied a different (and wrong) test.

The Original Designation tellingly contained no finding whatsoever that Hesai contributes to the Chinese defense industrial base (under any theory).  JA000030-000038 (AR9-17); *see* ECF No. 23, at 18 (calling this requirement "illusory").  But after the Department rescinded its Original Designation, its Amended Designation made a new finding:  an entity "contributes to the Chinese defense industrial base" so long as it makes any "dual use" products.  JA000151 (NDAR11).  Thus, the Amended Designation determined that Hesai meets this statutory requirement solely on the basis that it develops products that "*can*" have "substantial applications in the civilian and military sectors," regardless of whether they are actually made for the Chinese military, supplied to the Chinese military, or ultimately used by the Chinese military (or any military).  *Id.* (emphasis added).  The Department did not purport to find that the Chinese military procures or uses Hesai's LiDAR products; indeed, it did not even clearly find that LiDAR itself has military applications.  *See id.* (noting that LiDAR is used in the "development of *autonomous vehicles*, which can have military applications") (emphasis added).

The government's open-ended "dual use" definition is wrong. Making a product that a military could *hypothetically* use does not amount to "contribut[ing]" to—*i.e.*, affirmatively or actively supplying—military or defense efforts. JA000151 (NDAR11). Virtually every product—from canned food to automobiles to computers—"can" have substantial military applications. *See, e.g.*, Dep't of Commerce, *Dual Use Export Licenses* (acknowledging that "most commercial items" are "dual-use" in the sense they have "both commercial and military or proliferation applications"). [11] Under the Department's "dual-use" reading, then, every technology company (and most manufacturers) would qualify as a "contributor to the Chinese defense industrial base." *See Van Buren v. United States*, 593 U.S. 374, 393-394 (2021) ("breathtaking" scope of "interpretation" here "underscores" its "implausibility"); *cf. Xiaomi*, 2021 WL 950144, at *8 ("That [certain] technologies have military applications as well [as civilian ones] cannot

_____

[11]  https://www.bis.doc.gov/index.php/all-articles/2-uncategorized/91-dual-use-export-licenses#:~:text=EAR99%20items%20generally%20consist%20of,required%20to%20obtain%20a%20license.

be enough to support a conclusion" that an entity may be designated as a Communist Chinese Military Company.).

Moreover, the Department's capacious theory gives it *carte blanche* to pick and choose which companies to designate among innumerable companies making "dual use" items—including thousands of American and international companies that lack any meaningful connection to the Chinese military. *See Xiaomi*, 2021 WL 950144, at *8 (rejecting similar construction of predecessor statute that suffered from a "lack of any limiting princip[le]" that would "result in a situation where any Chinese company involved in technology that has alternative military uses," "even U.S. technology companies with Chinese subsidiaries," "could be designated"). For example, under the Department's premise that "autonomous vehicles *** can have military applications," *every* LiDAR manufacturer is subject to listing at the Department's whim—as well as every manufacturer of autonomous vehicle engines, cameras, detection sensors, computer displays, etc. JA000151 (NDAR11). Section 1260H should not be read to "infer such broad discretion without a clearer statement." *Genus Med. Techs. LLC v. FDA*, 994 F.3d 631, 643 (D.C. Cir. 2021); *see also id.* ("[W]e are especially troubled by the FDA's inability to

articulate a limiting principle with which to cabin its asserted discretion [to classify any device as a drug].”); *see, e.g., Iowa v. Wright*, 154 F.4th 918, 943 (8th Cir. 2025) (“The breadth of DOE’s current reading also shows it is not the best reading of the statute.”).

The Department’s rule is unbounded for yet another reason:  its dual-use definition fails to distinguish between categories of technologies that might have military applications and those that do not.  Instead, the Department has arbitrarily defined a broad category, LiDAR, as “dual-use”—and thus deemed all associated manufacturers subject to sanction. But that action conflicts with how other government agencies classify technology, including LiDAR specifically.  For instance, Commerce *does* restrict the export of certain highly specialized LiDAR products—*e.g.*, “[s]pace-qualified” products (which have a range measured in kilometers for orbital-to-surface ranging).  *See* 15 C.F.R. Pt. 774, Supp. No. 1, ECCN 6A008.j and 6A998.b.  But the record shows that Hesai’s products (which have a range measured in meters) do not meet the extreme specifications of that subset of LiDAR technology.  JA000506 (NDAR375).  The State Department’s U.S. Munitions List likewise controls only LiDAR that is “specially designed for a military end user” or “for rockets, missiles,

[space-launch vehicles], drones, or unmanned aerial vehicle systems." 22 C.F.R. § 121.1, Cat. XII(b)(6). But again, Hesai's products are not so designed.

At bottom, the Department's approach is equivalent to deeming a Chinese company that makes "computers" (plainly a "dual-use" product) a "contributor to the Chinese defense industrial base"—regardless of whether the company makes pocket calculators or advanced missile guidance systems. That can't be right.

*c.* The district court agreed with Hesai that reading "contributor to the Chinese defense industrial base" to include any entity that "produces a 'dual-use' product" would be "an overly broad reading of the statute." JA001427 (ECF No. 60, at 25). It properly recognized the statute's inquiry should focus on "how substantially an entity contributes to the military," such as by "provid[ing] goods and services that benefit the military." JA001428 (*id.* at 26). And it was "persuaded by the argument that the DoD must *** be required to find that a particular entity has a meaningful connection to the Chinese military before the DoD can list the entity as a 'Chinese military company.'" JA001419 (*id.* at 17).

Rather than actually demand a "meaningful connection," however, the court essentially adopted the government's dual-use standard. It held that "an entity contributes 'to the Chinese defense industrial base' if it produces a product or technology that has substantial military application, even if the entity's particular product is not directly supplied or used by the Chinese military and even if it also has commercial uses." JA001428 (ECF No. 60, at 26). In the court's view, requiring the Department to "identify a *substantial* military application"—without more—"provides a limit on the [Department's] overly broad interpretation." *Id.* (emphasis added).

But in application, the court's reading is indistinguishable from the "dual use" definition the government advanced (and that the court purported to "narrow"). Indeed, the government repeatedly indicated that its dual-use definition *already* required "*substantial* applications in the civilian and military sectors." *E.g.*, ECF No. 47, at 34 (emphasis added); *see, e.g.*, *id.* at 35 ("LiDAR is recognized as a dual-use technology with substantial applications in the civilian and military sectors."); *id.* at 37 n.15 (same); JA000151 (NDAR11) (same). Adding the "substantial" qualifier in no way narrows the government's "dual use" definition, given

that, as even the district court agreed, "an entity's commercial product could always have a potential military use." JA001427 (ECF No. 60 at 25). The district court's interpretation thus suffers from the same flaws as the Department's.

The district court also mischaracterized Hesai's interpretation in several respects. JA001426 (ECF No. 60, at 24). Hesai never argued that "an entity must *exclusively* be a military supplier" to contribute to the defense industrial base. JA001427 (*id.* at 25) (emphasis added). Nor did Hesai advance an interpretation "requiring some *direct* relationship with the Chinese military," or a "contractual relationship to supply a government with military products or services." JA001425-1426 (*id.* at 23-24) (emphasis added). An entity may also actively contribute to the defense industrial base indirectly, such as by "provid[ing] prime contractors with the goods and services necessary to perform defense contracts" for the military. JA001426 (*id.* at 24 n.10 (quoting CRS Report at 1)).

Finally, the district court wrongly concluded that Hesai's construction "ignores the unique problem of military-civil fusion that the statute was designed to address." JA001425-1426 (ECF No. 60, at 23-

24).  As the court elsewhere acknowledged, Congress addressed the military-civil fusion factor through a separately "defined term"—and thus gave "independent meaning" to the phrase "contribut[es] to the Chinese defense industrial base."  JA001422-1423 (*id.* at 20-21).   In reality, it was the district court's interpretation that ignored a crucial aspect of the statutory definition: that a "Chinese military company" designation requires a meaningful *military* connection.

3.    *Even under the Department's incorrect construction, the record lacks substantial evidence for Hesai's listing.*

In any event, the record does not support Hesai's listing even under the Department's (and district court's) flawed definition.

*a.*    Nothing in the record backs the Department's conclusion that the types of LiDAR products Hesai makes have "substantial military application."  JA001431 (ECF No. 60, at 29).  As the court frankly acknowledged, the sole evidence cited in the Department's Amended Designation provided "minimal support" for the Department's decision.  *Id.*[12]

---

[12] Even that description is generous:  the materials actually referenced in the Amended Designation—Hesai's Pitchbook profile and AZoOptics.com website—provide no support whatsoever for the

In court, the Department's litigation counsel relied exclusively on a "single piece of evidence" the court deemed "central to the [Department's] finding"—an article from an online magazine, "Defense One," which was identified only *after* Hesai sought summary judgment. JA001432 (ECF No. 60, at 30). But that article barely mentions Hesai at all (other than to note its 1260H listing and an allegation that the Department never relied on). The article's primary focus is on autonomous vehicles—and in particular, the computer systems (the "brain[s]") found in such vehicles, not LiDAR products (the "eyes"). JA001399-1401 (NDAR1714-1716). The article does not distinguish between military-grade sensors and the types of consumer and commercial sensors Hesai supplies, or explain why the latter has "substantial" military applications; instead, the article's sweeping thesis is apparently that "*any* progress towards autonomous capabilities inherently has military applications." JA001400 (NDAR1715) (emphasis added).

Moreover, the court tellingly relied on aspects of the article for findings *the Amended Designation never made*—despite the court's

<hr>

Department's linchpin conclusion that Hesai contributes to the Chinese defense industrial base. *See supra*, pp. 22-23.

earlier recognition that it "may not 'affirm an agency decision on a ground other than that relied upon by the agency.'" JA001413 (ECF No. 60, at 11 (quoting *Manin v. National Transp. Safety Bd.*, 627 F.3d 1239, 1243 (D.C. Cir. 2011)); *see Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016) ("[C]ourts *** may not supply a reasoned basis for the agency's action that the agency itself has not given."). For example, the court cited supposed "concerns around LiDAR's collection of" data—a finding the record squarely contradicts. *See, e.g.*, JA000504 (NDAR373); JA000520 (NDAR389) (Hesai's products cannot store or wirelessly transmit data); *see also Securing the Information and Communications Technology and Services Supply Chain: Connected Vehicles*, 89 Fed. Reg. at 79,092 (Department of Commerce's "technical analysis found that LiDAR generally lacks the ability to transmit from the vehicle"). Similarly, the court observed that the article "briefly suggests a connection" between Hesai and a company called China Electronics Technology Group Corporation, JA001432 (ECF No. 60, at 30)—another finding that

contradicts the agency's record.  *See* JA000514 (NDAR383); JA000523-524 (NDAR392-393) (Hesai has no "relationship" with that company).[13]

On substantial evidence review, the court is required to consider the entire record, "tak[ing] into account whatever in the record fairly detracts from its weight." *AT&T Corp. v. FCC*, 86 F.3d 242, 247 (D.C. Cir. 1996); *see Morall v. DEA*, 412 F.3d 165, 177 (D.C. Cir. 2005) (courts "may not find substantial evidence *** without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn") (internal quotation marks and citation omitted)); *see also David Saxe Prods., LLC v. NLRB*, 888 F.3d 1305, 1312-1313 (D.C. Cir. 2018) (agency acts arbitrarily and capriciously when it "fails to account for evidence" weighing against its conclusion).  But neither the

---

[13] Beyond the Defense One article, the district court also credited two projects (undisputedly years-old and unrelated to the military) as "somewhat probative of Hesai's past cooperation with Chinese government agencies that are at least in part focused on military-civil integration."  JA001434 (ECF No. 60, at 32).  But the Amended Designation never cited that evidence for the point that Hesai contributes to the Chinese defense industrial base, and Defendants' counsel disclaimed it as a source for that finding.  *See* JA001432-1433 (*id.* at 30-31) (confirming that no evidence "other than the Defense One Article" "suggests that Hesai contributes to the Chinese defense [industrial] base").

district court nor the Amended Designation accounted for undisputed record evidence that undermined the conclusion that the products in question had "substantial" military uses, such as the fact that the Department of Commerce does not treat Hesai's products as military products subject to special export restrictions, or that Hesai's products do not, in fact, meet military requirements. *See supra*, pp. 15-16. In light of the full record, the Defense One article alone does not reasonably support the conclusion that the types of commercial-grade LiDAR Hesai makes—let alone Hesai's products specifically—have "substantial" military applications.

Perhaps such doubts are why the district court ended its discussion by concluding that the Department's evidence is "*likely* sufficient to support [its] finding that Hesai contributes 'to the Chinese defense industrial base.'" JA0014343 (ECF No. 60, at 32) (emphasis added); *see also, e.g.*, JA001432 (*id.* at 30) (finding that cited evidence is "somewhat probative"). That is not the appropriate standard for summary judgment under the APA. *See AT&T*, 86 F.3d at 247. And for the reasons explained, the record does not back even that tentative conclusion. S*ee, e.g.*, *Judulang v. Holder*, 65 U.S. 42, 53 (2011) (even where agencies "have

expertise and experience in administering their statutes," including in the conduct of foreign affairs, courts "retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking").

*b.*  In any event, the district court never should have considered the Defense One article—which it regarded as the Department's "strongest" evidence, JA001432 (ECF No. 60, at 30)—in the first place. As the court acknowledged, despite the Department "admit[ting] [the article] was critical to its finding that Hesai contributes 'to the Chinese defense industrial base,'" the article "perplexing[ly] *** was not included in the initial administrative record." JA___ (*id.* at 33).  It was never referenced in the Amended Designation (which cited all the other material relied on, with specific access dates).  And as noted, it was not identified until *after* Hesai had filed its renewed motion for summary judgment.  The government's only excuse was a vaguely asserted "administrative error."  JA000124 (ECF No. 45).[14]

_____

[14] That was far from the Department's only acknowledged "error," as reflected in the confessions laced throughout Defendants' summary judgment response.  *See* ECF No. 47, at 7 n.6 ("inadvertent administrative error"); *id.* at 23 n.10 ("Regrettabl[e] *** clerical error"); *id.* at 29 n.13 ("inadvertently omits relevant text"); *id.* at 32 ("simply was not known to the Deputy Secretary of Defense at the time she rendered

"It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (internal quotation marks omitted). And "a court is ordinarily limited to evaluating the agency's *contemporaneous* explanation in light of the *existing* administrative record." *Department of Com. v. New York*, 588 U.S. 752, 780 (2019) (emphases added). Those sensible rules "ensur[e] that parties and the public can respond fully and in a timely manner to an agency's exercise of authority," and help avoid the problem of "forcing both litigants and courts to chase a moving target." *Regents*, 591 U.S. at 23.

The district court brushed aside those rules because, in its view, the article "merely supports the [Department's] core contention that LiDAR has substantial military application," and thus "Hesai cannot show that it is prejudiced by consideration of the Defense One Article." JA001438 (ECF No. 60, at 36). But as the opinion elsewhere makes clear, that

---

her decision"); *id.* ("verification is practically infeasible"); *id.* at 39 ("any error would be harmless"); *id.* at 42 ("harmless"); *id.* at 43 ("harmless"); *id.* at 46 ("harmless"); *id.* at 47 ("harmless").

"single piece of evidence is central to the DoD's finding." JA001432 (*id.* at 30); *see id.* (counsel's concession that nothing "other than the Defense One Article" supported its finding "that Hesai contributes to the Chinese defense [industrial] base"). As weak as it was, the article was still the government's only evidence. Of course its consideration was prejudicial.

## B. The Department's Finding That Hesai Resides In A "Military-Civil Fusion Enterprise Zone" Is Arbitrary And Capricious

In addition to establishing that Hesai contributes to the Chinese defense industrial base, the Department also had to find that Hesai is a "military-civil fusion contributor" under one of eight statutory factors. § 1260H(d)(1)(B)(i)(II). The district court held that the Department had sufficient evidence to conclude that Hesai meets one—*i.e.*, Hesai allegedly is an entity "residing in or affiliated with a military-civil fusion enterprise zone." JA001416 (ECF No. 60, at 14) (quoting § 1260H(d)(2)(E)). That conclusion was wrong.

*a.* As an initial matter, the Department's *ad hoc* finding should have been rejected as violating the APA. *See Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 81 (D.C. Cir. 2006) (absence of any agency explanation of "the standards

that guided its analysis" is a "fatal shortcoming").  Neither the statute nor the Amended Designation offers any definition of the unusual phrase "military-civil fusion enterprise zone."  Nor did the Department point to anything concrete, such as an established list of such zones.  Instead, the Amended Designation simply quotes the statutory language, lists a variety of disjointed facts, and declares the standard satisfied. JA000155-156 (NDAR15-16).

That approach threatens the sort of "impermissible 'ad hocery' on the part of [agencies] which is the core concern underlying the prohibition of arbitrary or capricious agency action." *Pacific Nw. Newspaper Guild, Loc. 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989); *see, e.g.*, *Trafalgar Cap. Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 n.11 (1st Cir. 1998) ("It is precisely this sort of ad-hoc standardless determination that is likely to be arbitrary and capricious under the [APA]." (citing *Morton v. Ruiz*, 415 U.S. 199, 232 (1974))).  The Department's failure to "'articulate a comprehensible standard' for assessing the applicability" of its purported evidence to the "statutory category," leaving regulated parties to guess why certain industrial areas (but not others) qualify as military-civil fusion zones, fails the basic "requirement of reasoned decisionmaking."

*ACA Int'l v. FCC*, 885 F.3d 687, 700 (D.C. Cir. 2018) (quoting *U.S. Postal Serv. v. Postal Regul. Comm'n*, 785 F.3d 740, 753-54 (D.C. Cir. 2015)).[15]

b.  In court, DOJ counsel for the first time supplied a definition of the term "military-civil fusion enterprise zone":  any "section of territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion through economic activity." ECF No. 47, at 27.  But the evidence did not come close to satisfying even that litigating definition.  The Department relied on 2022 and 2019 Google-translated announcements by a "District Bureau" and an "Industrial Alliance" mentioning "military-civil fusion" goals.  JA000156 (NDAR16); JA00163 (NDAR23 nn.50, 54).  Nothing in the administrative record indicates that either source—both apparently regional bodies of some sort—speaks for the "Chinese government" (however broadly the Department is defining that term).

---

[15] *See also, e.g.*, *Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024) (vacating because agency "fail[ed] to provide comprehensible guidance about what falls within the bounds of" statutory term); *Pearson v. Shalala*, 164 F.3d 650, 660 (D.C. Cir. 1999) (explaining that the APA requires agencies to "giv[e] some definitional content" to a vague statutory term by "defin[ing] the criteria it is applying").

Nor did the agency show (or even attempt to show) that the Chinese government "established" such zones to promote military-civil fusion. In fact, there is no record evidence as to how the decades-old "Chongqing Economic Development Zone" and "Jiading Industrial Zone" were "established" at all. At best, the government's evidence shows that the "Tianzhou Rongzhi Civil-Military Integration Industrial Park"—an apparent sub-zone—"was established *** *in* [the] Jiading Industrial Zone." JA001363 (NDAR1650) (emphasis added); *see also* JA001330 (NDAR1617); JA001355 (NDAR1642). But Hesai does not reside within that sub-zone, and nothing in the record suggests it does.[16]

Moreover, both the Chongqing Economic Development Zone and Jiading Industrial Zone are enormous areas, at 93 km² and 78 km²,

---

[16] Similarly, the document from the "Nan'an District Science and Technology Bureau" explains that the Chongqing Economic Development Zone's "[o]verall [a]pproach" is to "comprehensively promote[] high-quality economic and social development." JA001336-1337 (NDAR1623-1624). Its only "military" reference is a single use of the (nonstatutory) term "military-civilian integration" in a subset of seven listed goals. JA001340 (NDAR1627). Nothing indicates every company operating in that area is tied to that goal. On the contrary, the cited document makes clear that the Zone "encourage[s] all types of innovation entities to increase investment" across several different goals that have nothing to do with military-civil fusion, including promoting "key technologies in financial services, big health, big cultural tourism, productive services, and life services." JA001337-1340 (NDAR1624-1627).

respectively—*i.e.*, both larger than Arlington County, Virginia, at 67 km².

*See* ECF No. 42, at 39. No reasonable person would conclude that all of

Arlington County is a "military-civil fusion" zone just because the

Department is located there.

Proving the point, a host of major international consumer-facing

companies such as Qualcomm, Amazon Web Services, Volvo, Autoliv, and

Continental are Hesai's neighbors in the zones the Department declares

"military-civil fusion enterprise zones."[17] The Jiading Industrial Zone

alone contains "over 2,000 enterprises from more than 40 countries and

regions worldwide, including over 50 Fortune Global 500 companies and

---

[17] Qualcomm, *Joint Innovation Center*, https://www.qualcomm.cn/company/center (noting Qualcomm's presence in "Chongqing Economic and Technological Development Zone"); Amazon Press Center, *Amazon Web Services Announces Upcoming China Region for its Cloud Computing Platform* (Dec. 18, 2013), https://press.aboutamazon.com/2013/12/amazon-web-services-announces-upcoming-china-region-for-its-cloud-computing-platform (announcing collaboration between Amazon and Jiading Industrial Zone); *Shanghai Jiading Industrial Zone develops three 100 billion-level industries*, CHINA WORKERS NETWORK (Feb. 22, 2024), https://www.163.com/dy/article/IRIIG4M50550TYQ0.html (noting presence of Volvo, Autoliv, and Continental).

other well-known domestic and international enterprises."[18]  If Hesai "resides" in a military-civil fusion zone, so do all those companies.

The district court waved away the concerning breadth of the Department's reading because, in the court's view, the requirement that an entity "contribute 'to the Chinese defense industrial base'" would cabin section 1260H's reach.  JA001419 (ECF No. 60, at 17 & n.7) ("DoD *** is not required to designate a company present in one of these zones if it concludes that the company *** does not contribute 'to the Chinese defense industrial base.'").  But as explained, the Department's and district court's interpretation of that distinct statutory phrase offers no meaningful limit.  *See supra*, pp. 40-47.  Indeed, many (if not all) of the global companies that are Hesai's neighbors produce goods and services that, under the government's view, have "substantial military applications"—including the same "autonomous vehicles" technology that supposedly justifies Hesai's listing.  JA001432 (ECF No. 60, at 30): *see, e.g.*, Volvo Autonomous Solutions, *Transforming The Movement Of*

---

[18] Mao Guanjun, *12 projects in Jiading Industrial Zone signed contracts, with a total investment of over 4.3 billion yuan*, SHANGGUAN NEWS (Mar. 20, 2023), https://www.shobserver.com/wx/detail.do?id=594513.

*Goods* (discussing Volvo's development of "autonomous vehicles" for "on- and off-road applications");[19] Autoliv, *Autoliv and Volvo Cars to team up with NVIDIA to develop advanced systems for self-driving cars* (discussing Autoliv's and Volvo's partnership to "develop next generation self-driving car technologies").[20] None is listed except for Hesai. Such unexplained line-drawing is precisely the sort of arbitrary action the APA forbids. *See ACA Int'l*, 885 F.3d at 700 (agency action "will fail the requirement of reasoned decisionmaking" if the "agency cannot satisfactorily explain why a challenged standard embraces one potential application but leaves out another, seemingly similar one").

## II. THE DEPARTMENT'S VIOLATION OF HESAI'S DUE PROCESS RIGHTS REQUIRES VACATUR OF THE RE-LISTING DECISION

### A. The Department Failed To Provide Hesai Basic Due Process

The Fifth Amendment requires that, "before the government can constitutionally deprive a person of [a] protected liberty or property interest, it must afford him notice and hearing." *NCRI*, 251 F.3d at 205 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). Although

---

[19] https://www.volvoautonomoussolutions.com/en-en/.

[20] https://www.autoliv.com/press/autoliv-and-volvo-cars-team-nvidia-develop-advanced-systems-self-driving-cars-1500169.

"what process is sufficient \*\*\* and when \*\*\* that process must be available" can vary depending on the circumstances, *id.* at 206, this Court has already confirmed the process due here in a materially similar context involving redesignation to a sanctions list, *see People's Mojahedin Org. of Iran v. Department of State ("PMOI")*, 613 F.3d 220, 227-228 (D.C. Cir. 2010) (finding due process violation).

Specifically, in *PMOI*, this Court considered the Secretary of State's redesignation of an organization and its aliases as a "Foreign Terrorist Organization." 613 F.3d at 222. The organization argued that its redesignation violated the Due Process Clause because it "was notified of the Secretary's decision and permitted access to the unclassified portion of the record only *after* the decision was final." *Id.* at 227. This Court agreed. Although the organization "was given the opportunity to include in the record its own evidence supporting the delisting, it had no opportunity to rebut the unclassified portion of the record the Secretary was compiling." *Id.* In that context, minimum process required providing the organization with (i) notice prior to the relisting (or denial of a petition for removal); (ii) the unclassified material "upon which [Defendants] proposed to rely"; and (iii) "the opportunity to present, at

least in written form, such evidence as it may be able to produce to rebut the administrative record or otherwise negate the proposition that" it should remain listed. *Id.* at 227-228 (alterations omitted); *see also NCRI*, 251 F.3d at 208-209 (government failed same due process requirements in initially designating entity).

Because the government here has never claimed that it afforded those protections to Hesai, ECF No. 46-1, at 47-50, the only question below was whether they were triggered. All agree that the protections are owed when an agency action "has imposed some stigma" and "has worked some change in *** status under law." ECF No. 47, at 49 (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir.), *amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995)); *see NCRI*, 251 F.3d at 203-205 (applying test to entity designation). Both prongs are satisfied.

First, there is no dispute that "[t]he listing is causing Hesai serious reputational injury." JA000524 (NDAR393) (sworn declaration); *see* JA001406 (ECF No. 60, at 4) ("At a minimum, placement on the list creates a 'stigma' for an entity."). Indeed, "naming and shaming" appears to be the primary goal of Section 1260H designations—and with "a large impact." Brunner & Weinstein, *supra*. Being publicly tarred as a

military company has substantially interfered with Hesai's ability to raise capital and solicit investment from U.S. investors, and severely harmed its professional goodwill. JA000524-525 (NDAR393-394); *see, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 574 (1975) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the [Due Process] Clause must be satisfied.") (internal quotation marks and citation omitted).

Second, there is no question that the redesignation effectuated a change in Hesai's legal status. *See* JA001406 (ECF No. 60, at 4). The designation presently restricts Hesai (including Plaintiff Hesai Inc., a California-incorporated company) from accessing "certain grants, loans, contracts, and other benefits." *Id.* (internal quotation marks omitted); *see* 42 U.S.C. §§ 18912, 19235 (restrictions imposed under Chips Act in 2022); Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622. And Hesai is prohibited from bidding on contracts with the Department beginning in 2026. *See* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805, 137 Stat. 136 (2023); *see also, e.g.*, *Trifax Corp. v. District of Columbia*, 314

F.3d 641, 643 (D.C. Cir. 2003) ("debarring a corporation from government contract bidding constitutes a deprivation of liberty that triggers the procedural guarantees of the Due Process Clause"); *Taylor*, 56 F.3d at 1506 ("[I]f the government's action formally or automatically excludes the plaintiff from work on some category of future government contracts \*\*\*, that action \*\*\* implicates a liberty interest." (alterations omitted)). Independently, the stigmatizing listing so severely harmed Hesai's reputation that it "seriously affected" Hesai's investor and customer relationships and ability to enter into contracts (*i.e.*, to pursue its "chosen trade or business"). *Trifax Corp.*, 314 F.3d at 644 (internal quotation marks omitted); *see Taylor*, 56 F.3d at 1506 (noting this "[a]lternative[]" basis for invoking the Due Process Clause); *see also* JA000524-525 (NDAR393-394) (noting harms Hesai suffered in wake of listing).

Rather than meaningfully contest those prongs, Defendants mainly argued below that "[p]re-deprivation notice is not necessarily required when, as here, national security and foreign policy concerns are at stake." ECF No. 46-1, at 49-50. But Defendants cannot show this case represents an "extraordinary situation[]" that "justif[ied] postponing notice and opportunity for a hearing." *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972)

(noting that such situation "must be truly unusual"). Nor could they: No exigency precluded the Department from affording Hesai these basic protections. *Cf. Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678-679 (1974) (explaining "limited circumstances" when "postponement of notice and hearing is necessary"). Hesai had been in contact with the Department (through DOJ counsel) throughout this litigation. The only "exigency" appeared to be Defendants' fear that the district court might rule on the legality of the Original Designation after the Department no longer wished to defend it. *See* ECF No. 30 (seeking three-week postponement of summary judgment hearing to "render the original determination inoperative").

### B. The District Court's *Sua Sponte* Harmlessness Finding Was Error

Rather than address "the parties' dispute," the district court side-stepped their arguments and concluded, *sua sponte*, that the "real question" was whether any violation of Hesai's due process rights was harmless. JA001440-1441 (ECF No. 60, at 38-39). But the government itself never made that (forfeited) argument, for good reason: the court's holding is foreclosed by precedent and wrong on the facts.

The harmless-error doctrine "must be used gingerly, if at all, when basic procedural rights are at stake." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 n.16 (D.C. Cir. 1970). "[I]mposition of such a burden on the challenger is normally inappropriate where the agency has completely failed to comply" with procedural mandates. *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1324 (D.C. Cir. 1988). That is because an agency's "utter failure to comply" with due process "cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003). That caution is no less strict in the context of a redesignation on a sanctions list: a court "cannot presume" that the challenging party could not "have offered evidence which might have either changed the [agency's] mind or affected the adequacy of the record." *NCRI*, 251 F.3d at 209 (organizations prejudiced when the government issued a list of foreign terrorist organizations without due process).

That logic makes this case easy—which may explain why Defendants never raised a "harmless error" argument in the first place. Because of the failure to afford Hesai notice or an opportunity to be heard before the re-listing, Hesai was effectively barred from speaking directly

to the Department to clear up any factual blunders or to persuade the Department to take a different course. Hesai thus lacked "the benefit of meaningful adversary proceedings on any of the statutory grounds" at the agency level before the relisting. *NCRI*, 251 F.3d at 197. Because the Court, at a minimum, "cannot be sure that *** the Agency would have reached the same conclusion," the Court "cannot characterize the defect as harmless." *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1031 n.27 (D.C. Cir. 1978); *see NCRI*, 251 F.3d at 209.

The district court found Hesai's violation "harmless" anyway. JA001440, JA001442 (ECF No. 60, at 38, 40). In doing so, the court observed that Hesai had been able to submit two letters to the Department to "rebut[] the DoD's core contentions" in the Original Designation, and that Hesai did not "identify any additional evidence it would have offered or additional argument it would have made [to challenge the Amended Designation] if given the opportunity." JA001441-1442 (*id.* at 39-40).

That holding is foreclosed by this Court's precedent. A court "cannot presume" that the challenging party could not "have offered evidence which might have either changed the [agency's] mind or affected

the adequacy of the record." *NCRI*, 251 F.3d at 209. In fact, this Court rejected a near-identical argument in *PMOI*, in which the listed organization likewise had an "opportunity to include in the record its own evidence supporting delisting." 613 F.3d at 227. Put simply, allowing the government to "skip" the above procedures, "engage in informal consultation, and then be protected from judicial review unless a petitioner could show a new argument" would "eviscerate[]" the agency's procedural responsibilities. *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002).

The district court's conclusion is also obviously wrong on the facts. Both of Hesai's letters were submitted in response to the Department's *Original* Designation, which provided justifications "different from" those in the subsequently disclosed *Amended* Designation. JA001410 (ECF No. 60, at 8). Indeed, the Original Designation did not even make the crucial finding that Hesai contributes "to the Chinese defense industrial base." Thus, Hesai's *March* and *April 2024* letters could not have possibly provided an adequate opportunity to rebut the findings the Department made for the first time in *October 2024*. And Hesai obviously never had a chance to rebut the Defense One article—the single piece of

evidence "central to the DoD's finding"—that the Department disclosed for the first time mid-briefing in *January 2025*. JA001432, JA001435 (ECF No. 60, at 30, 33); *see also Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1262 (Fed. Cir. 2023) ("[W]hen a due process violation has occurred because of a denial of access to new and material information upon which an agency relied, no additional showing of prejudice is required.").

In short, the Department deprived Hesai of its due process rights, and Hesai was undoubtedly prejudiced as a result—making vacatur the proper remedy. *See Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) (explaining that because "vacatur is the default response to a fundamental procedural failure," courts may depart from that rule only in rare cases where the agency may "justify its decision to skip that procedural step," and not simply where the agency's "ultimate action could be justified"). Because the Department has already messed up one do-over and dragged out judicial review, there is no reason Hesai should have to continue to suffer harm while Defendants comply with their constitutional obligations. Accordingly, the Court should order that Hesai's listing be vacated and

that any future redesignation attempts be accompanied by the due process guaranteed by this Court's precedent.

<strong>CONCLUSION</strong>

This Court should reverse the district court's order and remand with instructions to grant Hesai's motion for summary judgment, vacate the Department's erroneous designation, and afford due process guaranteed by this Court's precedent going forward.

Respectfully submitted,

*/s/ James E. Tysse*
James E. Tysse
Lide E. Paterno
Caroline L. Wolverton
Margaret O. Rusconi
Natalia Heguaburo
AKIN GUMP STRAUSS HAUER &
   FELD LLP
2001 K Street NW
Washington, D.C. 20006
(202) 887-4000
jtysse@akingump.com

*Counsel for Plaintiffs-Appellants Hesai Technology Co., Ltd. and Hesai Inc.*

Dated: December 3, 2025

## CERTIFICATE OF COMPLIANCE

The foregoing brief is in 14-point Century Schoolbook proportional font and contains 12,833 words, and thus complies with Federal Rule of Appellate Procedure 32(a) and Circuit Rule 32(e)(1).

Dated:     December 3, 2025

*/s/ James E. Tysse*
James E. Tysse

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 3rd, 2025, I served the foregoing brief upon counsel of record by filing a copy of the document with the Clerk through the Court's electronic docketing system.


*/s/ James E. Tysse*
James E. Tysse

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

2021 National Defense Authorization Act,  Pub. L. No. 116-283,
§ 1260H, 134 Stat. 3388, 3965 ......................................................... Add. 1

United States Public Laws

116th Congress – Second Session

Public Law No. 116-283

January 1, 2021

**William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021**

# § 1260H. PUBLIC REPORTING OF CHINESE MILITARY COMPANIES OPERATING IN THE UNITED STATES.

(a) DETERMINATION.—The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company.

(b) REPORTING AND PUBLICATION.—

(1) ANNUAL REPORT.—Not later than April 15, 2021, and annually thereafter until December 31, 2030, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to subsection (a) to be a Chinese military company, in classified and unclassified forms, and shall include in such submission, as applicable, an explanation of any entities deleted from such list with respect to a prior list.

(2) CONCURRENT PUBLICATION.—Concurrent with the submission of each list described in paragraph (1), the Secretary shall publish the unclassified portion of such list in the Federal Register.

(3) ONGOING REVISIONS.—The Secretary shall make additions or deletions to the most recent list submitted under paragraph (1) on an ongoing basis based on the latest information available.

(c) CONSULTATION.—The Secretary may consult with the head of any appropriate Federal department or agency in making the determinations described in subsection (a) and shall transmit a copy of each list

submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency.

(d) DEFINITIONS.—In this section:

(1) CHINESE MILITARY COMPANY.—The term "Chinese military company"—

(A) does not include natural persons; and

(B) means an entity that is—

(i)(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party; or

(II) identified as a military-civil fusion contributor to the Chinese defense industrial base; and

(ii) engaged in providing commercial services, manufacturing, producing, or exporting.

(2) MILITARY-CIVIL FUSION CONTRIBUTOR.—The term "military-civil fusion contributor" includes any of the following:

(A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

(3) PEOPLE'S LIBERATION ARMY.—The term "People's Liberation Army" means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate.