**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25-5256**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

HESAI TECHNOLOGY CO., LTD. and HESAI INC.,

Appellants,

v.

UNITED STATES DEPARTMENT OF DEFENSE, et al.,

Appellees.

---

On Appeal from the United States District Court
for the District of Columbia

---

## BRIEF FOR APPELLEES

---


BRETT A. SHUMATE
*Assistant Attorney General*

SHARON SWINGLE
URJA MITTAL
*Attorneys, Appellate Staff*
*Civil Division, Room 7248*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-4895*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties

Plaintiffs-appellants are Hesai Technology Co., Ltd. and Hesai Inc.

Defendants-appellees are the U.S. Department of Defense, Peter B. Hegseth, in his official capacity as Secretary of the U.S. Department of Defense, and Michael Cadenazzi, in his official capacity as Assistant Secretary of Defense for Industrial Base Policy.[1]

### B. Rulings Under Review

Plaintiffs are appealing from the July 11, 2025 order and opinion entered by the Honorable Paul L. Friedman of the U.S. District Court for the District of Columbia in Case No. 24-cv-1381, *see* JA 1402-43, and from all prior rulings adverse to plaintiffs in this case that were incorporated in, antecedent to, or ancillary to the July 11, 2025 order and opinion, *see* Dkt. No. 61. The district court's July 11, 2025 opinion is available at 792 F. Supp. 3d 22.

[1] The position of Assistant Secretary of Defense for Industrial Base Policy is now held by Michael Cadenazzi, who is automatically substituted under Federal Rule of Appellate Procedure 43(c)(2) for Vic S. Ramdass, who was sued in his official capacity as the Acting Assistant Secretary of Defense for Industrial Base Policy.

### C. Related Cases

There are no related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C). However, there is another case pending in this Court in which a different litigant challenges its inclusion on the Department of Defense's Section 1260H List. *See SZ DJI Tech. Co. v. U.S. Dep't of Def.*, No. 25-5367 (D.C. Cir. appeal docketed Oct. 16, 2025).

*s/ Urja Mittal*
URJA MITTAL

# TABLE OF CONTENTS

**Page**


STATEMENT OF JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 1

PERTINENT STATUTES ........ 2

STATEMENT OF THE CASE ........ 2

A. Statutory Background ........ 2

B. Prior Proceedings ........ 5

STANDARD OF REVIEW ........ 13

SUMMARY OF ARGUMENT ........ 14

ARGUMENT ........ 17

I. The Department of Defense properly designated Hesai as a Chinese military company under Section 1260H. ........ 17

A. The determination that Hesai is a military-civil fusion contributor is supported by substantial evidence ........ 17

B. The determination that Hesai contributes to the Chinese defense industrial base is supported by substantial evidence ........ 33

II. The Department of Defense did not violate due process with the Section 1260H designation. ........ 52

CONCLUSION ........ 62

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*ACA Int'l v. Federal Commc'ns Comm'n*,
885 F.3d 687 (D.C. Cir. 2018) ........................................................27

*Bello v. Gacki*,
94 F.4th 1067 (D.C. Cir. 2024)...................................................57, 59

*Calero-Toledo v. Pearson Yacht Leasing Co.*,
416 U.S. 663 (1974) ..................................................................58

*Catawba County v. Environmental Prot. Agency*,
571 F.3d 20 (D.C. Cir. 2009) ..........................................................25

*Chai v. Department of State*,
466 F.3d 125 (D.C. Cir. 2006) .........................................................60

*Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*,
857 F.3d 913 (D.C. Cir. 2017) .........................................................13

*Goldfarb v. Mayor & City Council of Baltimore*,
791 F.3d 500 (4th Cir. 2015) ..........................................................42

*HollyFrontier Cheyenne Refin. LLC v. Renewable Fuels Ass'n*,
594 U.S. 382 (2021) ...............................................................18, 24

*Horning v. Securities & Exch. Comm'n*,
570 F.3d 337 (D.C. Cir. 2009) .........................................................60

*Islamic Am. Relief Agency v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) ......................................................13, 39

*Morton v. Ruiz*,
415 U.S. 199 (1974) ..................................................................28

*National Council of Resistance of Iran v. Department of State*,
251 F.3d 192 (D.C. Cir. 2001) ..................................55, 56, 57, 59, 61

*Pacific Nw. Newspaper Guild, Loc. 82 v. National Lab. Relations Bd.*,
877 F.2d 998 (D.C. Cir. 1989) .......................................................27, 28

*Paul v. Davis*,
424 U.S. 693 (1976) ..........................................................................53

*PDK Labs. Inc. v. U.S. Drug Enf't Admin.*,
438 F.3d 1184 (D.C. Cir. 2006) .........................................................25

*People's Mojahedin Organization of Iran v. U.S. Department of State*,
613 F.3d 220 (D.C. Cir. 2010) .......................................................56, 61

*Ralls Corp. v. Committee on Foreign Inv. in the U.S.*,
758 F.3d 296 (D.C. Cir. 2014) ............................................................57

*Reeve Aleutian Airways, Inc. v. United States*,
982 F.2d 594 (D.C. Cir. 1993) ............................................................53

*Roberts v. United States*,
741 F.3d 152 (D.C. Cir. 2014) ............................................................52

*Saline Parents v. Garland*,
88 F.4th 298 (D.C. Cir. 2023)..............................................................54

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
289 F.3d 89 (D.C. Cir. 2002) ..............................................................61

*Sycamore Indus. Park Assocs. v. Ericsson, Inc.*,
546 F.3d 847 (7th Cir. 2008) ..............................................................42

*Taylor v. Resolution Tr. Corp.*,
56 F.3d 1497 (D.C. Cir. 1995) .......................................................53, 54

*Trafalgar Cap. Assocs., Inc. v. Cuomo*,
159 F.3d 21 (1st Cir. 1998)..................................................................28

*Trifax Corp. v. District of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) ............................................................54

*Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
437 F.3d 75 (D.C. Cir. 2006) .......... 26

**Statutes:**

Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025,
Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123-26 (2024) .......... 3

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021,
Pub. L. No. 116-283,
§ 1260H, 134 Stat. 3388, 3965-67 (codified at 10 U.S.C. § 113 note), *amended by*, Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025,
Pub. L. No. 118-159,
§ 1346, 138 Stat. 1773, 2123-26 (2024) .......... 1, 3, 4, 5, 7, 12, 24, 31, 34, 41, 58, 59

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

50 U.S.C. § 4815(d)(3) .......... 43, 44

**Other Authorities:**

*Contribute*,
Merriam-Webster Dictionary Online,
https://perma.cc/3EV3-L58L .......... 40

*Contributor*,
Merriam-Webster Dictionary Online,
https://perma.cc/UTR2-RQ3G .......... 40

Dep't of Def.,
*DOD Dictionary of Military and Associated Terms* (2017),
https://perma.cc/Q73E-DMCB .......... 34, 41

*Enterprise*,
Merriam-Webster Dictionary Online,
https://perma.cc/G3SA-9WSJ .......... 18

90 Fed. Reg. 1,105 (Jan. 7, 2025) .......... 62

Luke A. Nicastro,
Cong. Rsch. Serv., *The U.S. Defense Industrial Base: Background and Issues for Congress* (2024),
https://perma.cc/D9H6-UZAP .......... 43

Off. of the Sec'y of Def., Dep't of Def.,
*Annual Report to Congress: Military and Security Developments Involving the People's Republic of China* (2020),
https://perma.cc/MGU4-5PV2 .......... 2, 18

*Zone*,
American Heritage Dictionary of the English Language Online,
https://perma.cc/2952-M8BZ .......... 19

## GLOSSARY

| | |
|---|---|
| LiDAR | Light Detection and Ranging |

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. JA 52. The district court granted summary judgment to the government on July 11, 2025. JA 1402; JA 1403-43. Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc. (collectively, Hesai) timely appealed on July 13, 2025. Dkt. No. 61. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Hesai sued the Department of Defense to challenge the Department's designation of Hesai as a "Chinese military company" under Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-67 (codified at 10 U.S.C. § 113 note), *amended by*, Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123-26 (2024).

The issues presented are:

1. Whether it was arbitrary or capricious for the Department to identify Hesai as a Chinese military company under Section 1260H based

on substantial evidence that Hesai is a military-civil fusion contributor to the Chinese defense industrial base.

2. Whether the Department violated procedural due process in identifying Hesai as a Chinese military company under Section 1260H.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. Statutory Background

This case concerns the statutory framework directing the Department of Defense to identify Chinese military companies operating in the United States. As the Department has observed, the Chinese government has sought to "fus[e] … China's defense industrial base and its civilian technology and industrial base" by finding ways to leverage private technology development for defense and military purposes. Off. of the Sec'y of Def., Dep't of Def., *Annual Report to Congress: Military and Security Developments Involving the People's Republic of China* 18 (2020), https://perma.cc/MGU4-5PV2.

In Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Congress directed the Department of Defense to identify "each entity" it "determines, based on

the most recent information available, is operating directly or indirectly in the United States … that is a Chinese military company," as defined in the statute. Pub. L. No. 116-283, § 1260H(a), 134 Stat. 3388, 3965 (codified at 10 U.S.C. § 113 note). On December 23, 2024, Congress amended Section 1260H in the Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025. Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123-26. The relevant aspects of Section 1260H as both originally enacted and subsequently amended are discussed below.[2]

Under Section 1260H, the Department may identify an entity as a "Chinese military company" if the entity meets two criteria. First, the entity must be either (i) directly or indirectly owned or controlled by the Chinese military or other state entities listed in the statute; or as relevant here, (ii) "identified as a military-civil fusion contributor to the Chinese defense industrial base." § 1260H(g)(2)(B)(i)(I)-(II) (previously

[2] For the Court's convenience, this brief provides citations to both the statute as originally enacted and as amended in 2024. Where a provision of Section 1260H is unchanged and located in the same part of Section 1260H as originally enacted, a single statutory citation is provided; where a provision of Section 1260H is amended or codified in a different part of Section 1260H, citations to both the originally enacted and current statutes are provided.

§ 1260H(d)(1)(B)(i)(I)-(II) (2021)). Second, the entity must be "engaged in providing commercial services, manufacturing, producing, or exporting." § 1260H(g)(2)(B)(ii) (previously § 1260H(d)(1)(B)(ii) (2021)). The Department is required to submit its list of designated Chinese military companies to Congress each year and to publish the unclassified portion of the list in the Federal Register. *See* § 1260H(b)(1)-(2). The Department is also required to "make additions or deletions to the most recent list submitted" to Congress "not less frequently than annually based on the latest information available." *See* § 1260H(b)(3).

Section 1260H defines the types of entities that qualify as military-civil fusion contributors. *See* § 1260H(g)(3)(A)-(H) (previously § 1260H(d)(2)(A)-(H) (2021)). In relevant part, Section 1260H defines military-civil fusion contributors to include any entity "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone." § 1260H(g)(3)(E) (previously § 1260H(d)(2)(E) (2021)).

Other definitions of military-civil fusion contributor in the statute include, but are not limited to, entities "knowingly receiving assistance from the Government of China or the Chinese Communist Party through

science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus," § 1260H(g)(3)(A) (previously § 1260H(d)(2)(A) (2021)); entities "affiliated with" the Chinese Ministry of Industry and Information Technology, for instance through participation in "research partnerships and projects," § 1260H(g)(3)(B)(i) (previously § 1260H(d)(2)(B) (2021)); and entities that "advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China," § 1260H(g)(3)(G) (previously § 1260H(d)(2)(G) (2021)).

### B. Prior Proceedings

**1.** Hesai makes Light Detection and Ranging (LiDAR) technology for passenger and commercial vehicles. *See* JA 1407. LiDAR uses lasers to create a three-dimensional representation of an object's physical surroundings and is primarily used as part of the navigation systems in autonomous vehicles. *See id.* Plaintiff Hesai Technology Co., Ltd. is wholly owned by a holding group named Hesai Group, which is incorporated under the laws of the Cayman Islands and headquartered

in Shanghai, China. *See id.* Hesai Technology Co., Ltd. wholly owns plaintiff Hesai Inc., which is incorporated in California. *See id.*

Pursuant to Section 1260H, the Department of Defense listed Hesai as a Chinese military company in January 2024. *See* JA 1407. In May 2024, Hesai filed suit to challenge its inclusion on the Section 1260H List. *See* JA 1408. In September 2024, the Department informed the district court that it had received new information and expected to reassess Hesai's listing pursuant to its statutory obligation to update the list based on the latest information available. *See* Dkt. No. 34. In October 2024, the Department delisted Hesai and then relisted Hesai based on a new decision report. *See* JA 83-102; JA 141-45. Hesai filed an amended complaint the following month, challenging the Department's designation as arbitrary and capricious and contending that the Department had violated Hesai's due-process rights. *See* JA 48-80.

In January 2025, the Department published its annual Section 1260H List, which included Hesai pursuant to the October 2024 designation. The Department provided Hesai with a decision report dated September 17, 2024 that explained the reasons for the designation. JA 83-102.

**2. a.** The district court upheld the Department's October 2024 relisting of Hesai as a Chinese military company. *See* JA 1403-43. The court concluded that the Department had properly identified Hesai as a military-civil fusion contributor under Section 1260H because the Department had substantial evidence to support its determination that Hesai was an entity "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone." § 1260H(g)(3)(E) (previously § 1260H(d)(2)(E) (2021)); JA 1420.[3]

Specifically, the district court explained that the Department had properly determined that Hesai met the enterprise-zone definition of a military-civil fusion contributor based on record evidence of two major development centers that Hesai has built or plans to build in two Chinese military-civil fusion enterprise zones, Chongqing Economic and Technological Development Zone and Jiading Industrial Zone. *See* JA 1416; JA 93-94.

[3] The district court noted that it applied Section 1260H as originally enacted. *See* JA 1405. The December 23, 2024 amendments to Section 1260H did not affect the text of the definition of a military-civil fusion contributor relevant to this appeal, just its location in Section 1260H. *See* § 1260H(g)(3)(E) (previously § 1260H(d)(2)(E) (2021)).

The district court explained that substantial record evidence demonstrated that Chongqing Economic and Technological Development Zone and Jiading Industrial Zone are military-civil fusion enterprise zones within the meaning of the statute. *See* JA 1416. The court pointed to record evidence that Chinese regional organizations and governmental entities described both zones as designed to "promote economic activity and military cooperation." *Id.* This included, for instance, an explanation that the Chongqing Economic and Technological Development Zone was designed to "promote scientific and technological military-civilian integration innovation." JA 1417 (quotation marks omitted). And the court quoted an article in the record that detailed the "establishment of the military-civilian integration industry alliance in Jiading Industrial Zone … to connect with the national strategy of military-civilian integration." *Id.* (quotation marks omitted).

Notably, Hesai did not "meaningfully dispute that" at least parts of these zones are military-civil fusion enterprise zones. JA 1418. Nor did Hesai dispute that it has or is building facilities within both military-civil fusion enterprise zones. *See id.* The district court rejected Hesai's

argument that residing in a military-civil fusion enterprise zone is insufficient in view of "the plain statutory language." JA 1419.

The district court also rebuffed Hesai's argument that the Department's designation was arbitrary and capricious because the Department had not explained why other entities with facilities in such enterprise zones, "such as Volvo," are not included on the list. JA 1419. As the district court explained, "an entity's mere residence [in] or affiliation with a 'military-civil fusion enterprise zone' does not make the entity sufficiently 'similar' to Hesai for purposes [of] Section 1260H designation," since the Department may very well conclude that the entity does not satisfy the other statutory criteria if, for instance, it does not contribute to the Chinese defense industrial base. *Id.* In other words, the court explained, the Department had shown that Hesai met all the statutory criteria for being designated as a Chinese military company, and Hesai could not show that the assorted other companies satisfied these criteria as well. *See id.*

**b.** Having concluded that Hesai met the definition of a military-civil fusion contributor, the district court turned to the Department's determination that Hesai contributed to the Chinese defense industrial

base. The court explained that although Section 1260H does not define the "Chinese defense industrial base," the Department's *Dictionary of Military and Associated Terms* "is concerned with 'capabilities' that allow for direct or indirect military contributions," and therefore covers not just military suppliers but "entities that provide goods and services that benefit the military." JA 1428 (emphasis omitted). Thus, the court explained that an entity contributes to the Chinese defense industrial base if it "produces a product or technology that has substantial military application or benefit," even if it also has commercial uses and is not directly supplied to or used by the Chinese military. JA 1430. The court explained that this interpretation "comports with the concerns identified by Congress related to 'military-civil fusion' and the 'defense industrial base' by being properly inclusive of contributions that are more commercial in nature," given Congress' concerns that China was "leveraging the private sector for military advantage." JA 1429.

After assessing the record evidence, the district court upheld the Department's determination that Hesai's LiDAR technology contributes to the Chinese defense industrial base. JA 1434. The court explained that the evidence reflected "LiDAR's military application – particularly

as it relates to the development of autonomous vehicles – the national security concerns around Chinese LiDAR manufacturers, and Hesai's cooperation with Chinese agencies that have some focus on military-civil integration." *Id.* The court noted that the Department was also due a "heightened level of deference" given that this is a "matter[] concerning national security," and that the court would "credit the [Department]'s finding that LiDAR technology has military application, particularly in view of the [Department]'s subject matter expertise in a more technical area like military technology." *Id.* The court detailed the substantial evidence supporting the Department's conclusion, noting that LiDAR technology "is currently being used by the Russian and Chinese militaries." JA 1435.

Hesai did not dispute that it met the other criteria required to be identified as a Chinese military company under Section 1260H. Specifically, Hesai did not dispute that it is engaged in providing commercial services, manufacturing, producing, or exporting. *See* JA 95. And it did not dispute that it operates directly and indirectly in the United States. *See* JA 89. Therefore, the district court upheld the Department's designation of Hesai under Section 1260H. *See* JA 1443.

**c.** Because the district court upheld the Department's designation of Hesai on enterprise-zone grounds, the district court did not reach the Department's other grounds for listing Hesai as a military-civil fusion contributor. *See* JA 1416. Specifically, in the Department's decision relisting Hesai as a Chinese military company under Section 1260H, the Department explained that it had also determined that Hesai is a military-civil fusion contributor because it (1) knowingly receives assistance from the Government of China through science and technology efforts initiated under the Chinese military industrial planning apparatus, § 1260H(g)(3)(A) (previously § 1260H(d)(2)(A)(2021)); (2) is affiliated with the Chinese Ministry of Industry and Information Technology through research partnerships and projects, § 1260H(g)(3)(B) (previously § 1260H(d)(2)(B) (2021)); and (3) advertises on a non-governmental military equipment procurement platform in China, § 1260H(g)(3)(G) (previously § 1260H(d)(2)(G) (2021)). JA 1410-11; JA 88-97.

**d.** Finally, the district court rejected Hesai's procedural-due-process claim, because Hesai had failed to establish any prejudice that it suffered from the failure to be provided notice and an opportunity to be

heard before the Department's relisting of the company. *See* JA 1441-42. The court underscored that Hesai had not "identif[ied] any additional evidence it would have offered or additional argument it would have made if given the opportunity." *Id.*

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment. *See Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913, 918 (D.C. Cir. 2017). Under the Administrative Procedure Act, the Court's review is "highly deferential" to the agency, and the agency's action may be set aside "only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quotation marks omitted). Agency findings "that are supported by substantial evidence" will be upheld, even if the Court "might have reached a different conclusion in the first instance." *Id.* In particular, "in an area at the intersection of national security, foreign policy, and administrative law," the Court's review under the Administrative Procedure Act is "extremely deferential." *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007).

## SUMMARY OF ARGUMENT

**I.** Under Section 1260H, Hesai was properly designated a Chinese military company on the basis of substantial record evidence showing that Hesai qualifies as a military-civil fusion contributor to the Chinese defense industrial base.

**A.** The Department of Defense concluded that Hesai meets the statutory definition of a military-civil fusion contributor because it resides in two military-civil fusion enterprise zones, the Chongqing Economic and Technological Development Zone and the Jiading Industrial Zone.

The record evidence shows ties between the economic development plans for the two zones, which involves inviting private investment and development from companies like Hesai, and the country's broader military-civil fusion strategy, which seeks to leverage private scientific and technology development for defense and military purposes. At its facilities in these two zones, Hesai develops or plans to develop LiDAR technology, which uses lasers to create three-dimensional renderings of an environment and is used in navigation systems in autonomous vehicles. As the district court correctly concluded, this undisputed

evidence is sufficient to support the Department's determination that Hesai is a military-civil fusion contributor under Section 1260H.

**B.** The district court also properly upheld the Department's determination that Hesai is a military-civil fusion contributor "to the Chinese defense industrial base." As the court found, sufficient record evidence supports the conclusion that Hesai's LiDAR technology has substantial military application or benefit. The record explained how LiDAR has become the "eyes" for autonomous vehicles and driver assistance systems in both military and civilian vehicles and showed the Chinese military's interest in autonomous vehicle systems. The court credited this and other evidence in the record, finding it sufficient to support the Department's determination that Hesai is a military-civil fusion contributor to the Chinese defense industrial base, particularly in light of the heightened deference this Court affords agency decisions on issues of national security.

**II.** The district court properly rejected Hesai's arguments that the Department violated its due-process rights by relisting Hesai as a Chinese military company under Section 1260H without providing notice and an opportunity to be heard beforehand. Hesai fails to establish any

constitutionally protected interest that was implicated by the designation. Alleged reputational harm alone does not suffice, and Hesai has not provided any evidence that it has been precluded from specific contracts or benefits that it intended to pursue or that it has been broadly precluded from pursuing its line of business.

Even if Hesai had shown a deprivation of a constitutionally protected interest, however, it cannot show that pre-deprivation notice was required in the Section 1260H context. Due process affords only those protections that are appropriate for the context, and here, the pre-deprivation notice of a Section 1260H designation would risk prejudicing the national-security interests animating the statutory scheme. Under settled precedent, pre-deprivation notice is not required, because Section 1260H was enacted to protect the U.S. military supply chain and the U.S. government from potential foreign interference, and pre-deprivation notice risks attempts by companies to circumvent the statutory scheme. In other words, Congress designed the statute without an advance notice requirement to secure an important government interest in national security and a special need for prompt government action. Moreover, the Secretary of Defense is responsible for determining that this deprivation

is necessary and justified within the highly circumscribed parameters of Section 1260H.

The district court rejected Hesai's due-process claim because Hesai failed to show any prejudice from the lack of pre-deprivation notice. Specifically, the district court found that Hesai did not identify any additional evidence or argument it would have offered if given the opportunity, let alone any that would have affected the Department's decision-making. This Court can affirm for this reason as well.

## ARGUMENT

### I. The Department of Defense properly designated Hesai as a Chinese military company under Section 1260H.

#### A. The determination that Hesai is a military-civil fusion contributor is supported by substantial evidence.

**1.** The Department of Defense properly designated Hesai as a Chinese military company under Section 1260H on the basis of substantial record evidence demonstrating that Hesai is a military-civil fusion contributor to the Chinese defense industrial base. The Department determined that Hesai meets the statutory definition because it is an entity residing in or affiliated with a military-civil fusion enterprise zone. As the district court concluded, this determination was properly based on substantial evidence that Hesai has built or plans to

build two major development centers in two Chinese military-civil fusion enterprise zones, Chongqing Economic and Technological Development Zone and Jiading Industrial Zone. Hesai did not dispute that it resides in these two military-civil fusion enterprise zones, and that is all that is required to support the statutory designation.

The record evidence demonstrates that both Chongqing Economic and Technological Development Zone and Jiading Industrial Zone are military-civil fusion enterprise zones. China's military-civil fusion policy involves leveraging private development, particularly technology development, for military and defense purposes. *See* Off. of the Sec'y of Def., Dep't of Def., *Annual Report to Congress: Military and Security Developments Involving the People's Republic of China*, *supra*, at 18. Because Congress did not define the statutory term "military-civil fusion enterprise zone" in Section 1260H, it is properly interpreted in accordance with its plain meaning. *See HollyFrontier Cheyenne Refin. LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021). An "enterprise" is a "unit of economic organization or activity," such as a business organization. *Enterprise*, Merriam-Webster Dictionary Online, https://perma.cc/G3SA-9WSJ (definition 2.a). And a "zone" is a "section

of an area or territory established for a specific purpose, as a section of a city restricted to a particular type of building, enterprise or activity." *Zone*, American Heritage Dictionary of the English Language Online, https://perma.cc/2952-M8BZ (definition 1.b). Thus, a military-civil fusion enterprise zone is a territory established by the Chinese government for the purpose of advancing its military-civil fusion policy through economic activity. *See* JA 1416 (accepting this definition and noting that Hesai did not offer a competing interpretation of the statutory term).

Both the Chongqing and Jiading zones are military-civil fusion enterprise zones. The Chongqing Economic and Technological Development Zone seeks to advance military-civil fusion through scientific and technological innovation. Chongqing is a municipality in southern China that is directly administered by the central government. In 2022, the Nan'an District Science and Technology Bureau, which is part of the Nan'an District in Chongqing, issued a policy document describing the "[i]nterpretation" of the Chinese Communist Party's Fourteenth Five-Year Plan "for the development of scientific and technological innovation in Chongqing Economic and Technological Development Zone." JA 1335. The policy document explained that

"[s]ince the 18th National Congress of the Communist Party of China, the Party Central Committee with Comrade Xi Jinping as the core has placed scientific and technological innovation at the core of the overall national development and vigorously implemented the innovation-driven development strategy." JA 1336. The document outlined a "plan to "promot[e] the high-quality scientific and technological innovation work in the district during the '14th Five-Year Plan' period." *Id.* A "Key Task[] of the Plan" is to "promote scientific and technological military-civilian integration innovation" and "promote high-quality scientific and technological innovation with high-level open cooperation." JA 1338, 1340; JA 94; *see* JA 1417.

The Jiading Industrial Zone, which is located in Jiading, a suburban district of Shanghai, shares these goals of advancing military-civil fusion. An article in the record describes "[t]he establishment of the military-civilian integration industry alliance in Jiading Industrial Zone … to connect with the national strategy of military-civilian integration." JA 1363; JA 94; *see* JA 1417. The article continues: "The relevant person in charge of Jiading District said that the military industry has gathered scientific research institutes, universities and other scientific research

forces, and has a number of major core technologies in major national science and technology projects." JA 1363. The ties between these zones' economic efforts and the country's military goals are no secret. The same article explains that "the military and local governments have broad market prospects for making joint innovations and speeding up the industrialization of scientific and technological achievements." *Id.* As examples of "cooperation in the field of military-civilian integration," the article describes how the Jiading Industrial Zone will "promote the development of integrated circuits, Internet of Things, intelligent manufacturing, new energy vehicles[,] and other industries." JA 1364.

Hesai does not dispute that it has built or is building facilities to develop its technologies and products in both enterprise zones. *See* JA 1418. Hesai recently signed an investment agreement with Chongqing Economic and Technological Development Zone to build facilities in the zone—specifically, its "Technology Software Global Development Headquarters," an "innovation incubation center," and a "LiDAR industrial park." JA 93; *see* JA 1327. An article about the Hesai-Chongqing agreement reports that a municipal government representative described Chongqing as "fully implementing the spirit of

the 20th National Congress of the Communist Part of China," by placing "high-quality development of the manufacturing industry in a more prominent position" and building a "world-class intelligent networked new energy vehicle industry cluster." JA 1327. The same municipal representative observed that Hesai is a "global leader in autonomous driving and advanced driver assistance laser radar" and that they hoped to "expand the application of laser radar in intelligent construction and other aspects." *Id.*

In Jiading Industrial Zone, Hesai recently completed construction of the Maxwell Intelligent Manufacturing Center, which covers approximately 40 acres; "the design of the exterior is inspired by an aircraft carrier." JA 94; JA 1343. The Hesai center will undertake "laser radar research and development, production, and vehicle regulation testing," JA 1343, with a variety of facilities for "a smooth transition from design to production," JA 1358; *see also* JA 94; JA 1354-55. A news article in the record describing the new Hesai center explained that Hesai had "obtained mass production orders from 11 mainstream automobile manufacturers" and recently "landed on Nasdaq" as the "first Chinese LiDAR stock." JA 1343 (quotation marks omitted).

Hesai's development of LiDAR technology advances China's military-civil fusion strategy. As the Department explained, LiDAR, including Hesai's technology, has "substantial applications in the civilian and military sectors." JA 89. "In the military sphere," the Department explained, "LiDAR improves navigation, situational awareness, targeting systems, and surveillance capabilities, making it a valuable asset for the Chinese military." *Id.* "For example, the [People's Liberation Army] uses LiDAR in its development of autonomous vehicles, which can have military applications." *Id.*

Thus, as the district court correctly concluded, the Department proffered sufficient evidence that Hesai resides in a military-civil fusion enterprise zone and therefore meets the statutory definition of a military-civil fusion contributor. *See* JA 1420.

**2. a.** Hesai does not dispute that it resides within these two military-civil fusion enterprise zones. And as the district court concluded, under the plain text of Section 1260H, residing in these zones is enough to support the Department's determination that Hesai is a military-civil fusion contributor under the statute. *See* JA 1418-19.

Straining to challenge this straightforward conclusion, Hesai contends that the Department's determination was improper because Congress did not define "military-civil fusion enterprise zone," and the Department in turn did not define the phrase in its decision. Br. 54-55. This was hardly error. The statute grants the Department the discretion to "identify each entity the Secretary determines" meets the statutory definition of a Chinese military company. § 1260H(a). Congress' decision not to define each term in the statute did not render the Department's designation arbitrary. Congress often chooses not to furnish statutory definitions for statutory terms, and in such cases, courts and agencies properly give those terms their plain meaning. *See HollyFrontier Cheyenne Refin.*, 594 U.S. at 388.

That is precisely what the Department did here when it explained that the term "military-civil fusion enterprise zone" means "territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion through economic activity." JA 1416 (quotation marks omitted). This definition maps onto the plain meaning of the words in the statutory phrase: "zone" refers to "territory," "military-civil fusion" refers to "military-civil fusion," and "enterprise"

refers to "economic activity." Hesai is not challenging the statute or contending that it is impermissibly vague, and Hesai offers no reason to conclude that Congress did not mean what it said in the statute.

Nor did the Department err by not setting out a comprehensive list of military-civil fusion enterprise zones or adopting a formal definition of the statutory term before applying it in its decision (*see* Br. 55). This Court has recognized that an agency is not "obliged to issue a comprehensive definition" of an undefined statutory term but instead is "entitled to proceed case by case" in "fleshing out the contours" of the term. *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 438 F.3d 1184, 1194 (D.C. Cir. 2006) (quotation marks omitted); *see also Catawba County v. Environmental Prot. Agency*, 571 F.3d 20, 39 (D.C. Cir. 2009) (per curiam). Here, the Department reasonably construed the statute when it applied the plain meaning of the words in the statute to the record evidence. The record evidence demonstrates that the Chongqing and Jiading zones aim to advance Chinese enterprise and military-civil fusion policy, and as the record evidence illustrates, the zones were established to further China's military-civil fusion policy goals. This was sufficient

under the statute, which does not require that the enterprise zones "speak[] for the 'Chinese government,'" as Hesai contends (Br. 56).

**b.** The cases on which Hesai relies are likewise out of place. In *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75 (D.C. Cir. 2006), this Court determined that the agency had not adequately explained why it had classified a particular substance as an "explosive," in part because the relevant question was whether the substance "functions by deflagration." *Id.* at 81. The agency's "fatal shortcoming" was that scientific record evidence suggested that the "defining characteristic is burn velocity" but the agency had "never define[d] a range of velocities within which materials will be considered to deflagrate." *Id.*

Here, by contrast, there is no record evidence here suggesting that the relevant term "military-civil fusion enterprise zone" is defined by any such scientific metric that was applied without adequate explanation. Hesai feigns at confusion but fails to explain why the plain-meaning definition of the statutory term is inadequate for regulated parties to understand "why certain industrial areas (but not others) qualify as military-civil fusion zones." Br. 55; *see* JA 1420 (rejecting this argument

and concluding that "the [Department] provide[d] 'a satisfactory explanation for its action including a rational connection between the facts found and the choice made'" (citation omitted)).

This is not a case where a "purported standard is indiscriminate and offers no meaningful guidance," as in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018), where the Court found that an agency's interpretation of the statutory term "capacity" was unreasonable in a highly technical inquiry into whether a device qualified as an "automatic telephone dialing system." *Id.* at 695, 699-700 (quotation marks omitted). The Department's application of the phrase "military-civil fusion enterprise zone" bears no resemblance to these cases involving the application of single-word statutory terms with manifold meanings to highly scientific and technical regulatory contexts. *See* JA 1420 (rejecting the same argument).

The other cases that Hesai cites are even farther afield from the facts of this case. In *Pacific Northwest Newspaper Guild, Local 82 v. National Labor Relations Board*, 877 F.2d 998 (D.C. Cir. 1989), this Court criticized an agency's application of statutory language when the agency failed to explain its inconsistency with prior precedent, which had left the

regulated entity unable to predict whether its conduct was lawful. *See id.* at 1001-03. There is no such "ad hocery" at issue here, *id.* at 1005, since the Department's plain-meaning interpretation of "military-civil fusion enterprise zone" does not depart from any prior interpretation by the Department.

Hesai cites *Morton v. Ruiz*, 415 U.S. 199 (1974), and *Trafalgar Capital Associates, Inc. v. Cuomo*, 159 F.3d 21 (1st Cir. 1998), but those cases involved complex statutory schemes concerning government benefits where, unlike here, the straightforward application of the statutory text was insufficient. In *Morton*, the Supreme Court criticized the Bureau of Indian Affairs' failure to "create reasonable classifications and eligibility requirements in order to allocate the limited funds" it had been appropriated to provide welfare services for Indian beneficiaries. 415 U.S. at 230-36. And in *Trafalgar Capital Associates*, the First Circuit cited *Morton* to explain why a different agency's classification of certain funds as a grant, rather than a loan, was unreasonable. *See* 159 F.3d at 33-34, 34 n.11. Here, by contrast, the Department had no need to issue any additional classification rules or guidance. It simply applied the ordinary meaning of the relevant statutory term—military-civil fusion

enterprise zone—to a record replete with facts that leave no doubt as to the term's application.

**c.** Left with little else to dispute the Department's finding that these two zones are military-civil fusion enterprise zones, Hesai contends that the record evidence focuses on the Tianzhou Rongzhi Civil-Military Integration Industrial Park, a sub-zone in the Jiading Industrial Zone, and Hesai does not reside within that "sub-zone." Br. 57 (citing JA 1363). That is beside the point. The relevant article in the record describes the "*Jiading* Industrial Zone Civil-Military Integration Industry Alliance" as a "specific measure to connect with the national strategy of military-civilian integration." JA 1363 (emphasis added). Even assuming Hesai is correct that Jiading Industrial Zone's efforts to "opening up the military-civilian integration industry channel, serving aerospace, military defense intelligent equipment and civilian high-end manufacturing," *id.*, are concentrated in a "sub-zone" in which Hesai is not located, that does not disprove the Department's conclusion that the Jiading Industrial Zone is a military-civil fusion enterprise zone in part because it contains such a "sub-zone."

By the same token, the fact that the policy document in the record from the Nan'an District Science and Technology Bureau explains that the Chongqing Economic and Technological Development Zone has "several" goals in addition to "military-civilian integration," Br. 57 n.16, does not undermine the Department's conclusion that the zone is a military-civil fusion enterprise zone. As explained, the very nature of Chinese military-civil fusion policy is that it involves promoting industrial, economic, and scientific development alongside, and in furtherance of, military and defense aims. Thus, record evidence showing that these zones seek to promote scientific and technological development does not undermine the Department's conclusion that these are military-civil fusion enterprise zones. To the contrary, this is entirely consistent with the Department's plain-meaning construction of this statutory term, which includes the words "civil," references the "fusion" of civilian aims with military ones, and describes the "enterprise" focus of these zones. And under the statute, the size of these zones is immaterial to whether Hesai or any other entity resides in those zones (Br. 57-58).

**d.** Nor does the fact that other "international consumer-facing companies" reside in the zones mean that the Department's designation was arbitrary and capricious. Br. 58. As the district court explained when it rejected this argument, Hesai has not shown that "mere residence [in] or affiliation with a 'military-civil fusion enterprise zone'" makes these other entities "sufficiently 'similar' to Hesai for purposes of the Section 1260H designation." JA 1419. The statute grants the Department the discretion to "identify each entity the Secretary determines" meets the statutory requirements to be placed on the Section 1260H List. § 1260H(a). Even if an entity resides in a military-civil fusion enterprise zone, it must also be a military-civil fusion contributor "to the Chinese defense industrial base," § 1260H(g)(2)(B)(i)(II) (previously § 1260H(d)(1)(B)(i)(II) (2021)); it must be "operating directly or indirectly in the United States or any of its territories and possessions," § 1260H(a); and it "must be engaged in providing commercial services, manufacturing, producing, or exporting," § 1260H(g)(2)(B)(ii) (previously § 1260H(d)(1)(B)(ii) (2021)). As the district court explained, the Department need not designate a company that resides in one of these zones if a company fails to satisfy the other

statutory criteria—for instance, if it does not contribute to the Chinese defense industrial base. *See* JA 1419. In so recognizing, the district court was not "wav[ing] away" any statutory interpretation concerns (Br. 59), but rather recognizing that the Department's designation decisions are based on its assessment of all of the statutory criteria taken together. It was not arbitrary and capricious for the Department to determine that Hesai, residing in these military-civil fusion enterprise zones, where it develops LiDAR technology, satisfied the Section 1260H criteria, but that other companies did not.[4] And to the extent Hesai's dispute is with the Department's plain-meaning understanding of "resides" (Br. 59), Hesai fails to provide a competing interpretation of the word that comports with the statute.

This Court can and should affirm the district court's decision upholding the Department's designation of Hesai as a Chinese military

[4] To the extent Hesai is arguing that the other companies it names contribute to the Chinese defense industrial base (Br. 59-60), Hesai's argument reflects its attempt to shift its challenge to the Department's interpretation and application of the statutory requirement that the entity be a "contributor to the Chinese defense industrial base," which is addressed below, rather than the Department's interpretation of the statutory enterprise-zone definition of a military-civil fusion contributor, which rests on residence in the zone and nothing more.

company on the ground that Hesai resides in a military-civil fusion enterprise zone. If this Court disagrees with the district court, however, it should not vacate the listing but should instead remand for the district court to review in the first instance the Department's determination that Hesai meets three other grounds for designation as a military-civil fusion contributor, *i.e.*, Hesai knowingly receives assistance from the Chinese government through science and technology efforts initiated under the Chinese military industrial planning apparatus; Hesai is affiliated with the Chinese Ministry of Industry and Information Technology through research partnerships and projects; and Hesai's products are advertised on a military equipment procurement platform. *See* JA 88. The Department proffered substantial evidence supporting its determinations that Hesai is a military-civil fusion contributor on each of these grounds as well.

### B. The determination that Hesai contributes to the Chinese defense industrial base is supported by substantial evidence.

**1.** Under Section 1260H, the Department of Defense may identify an entity as a Chinese military company if it is a military-civil fusion contributor "to the Chinese defense industrial base."

§ 1260H(g)(2)(B)(i)(II) (previously § 1260H(d)(1)(B)(i)(II) (2021)). After concluding that Hesai meets the definition of a military-civil fusion contributor, the district court upheld the Department's determination that Hesai contributes to the Chinese defense industrial base because substantial record evidence demonstrates that Hesai's LiDAR technology has substantial military application or benefit.

In upholding the Department's determination that Hesai is a military-civil fusion contributor to the Chinese defense industrial base, the district court drew on the definition of "defense industrial base." The Department's *Dictionary of Military and Associated Terms* defines the term, in the domestic context, as "[t]he Department of Defense, government, and private sector worldwide industrial complex with capabilities to perform research and development, design, produce, and maintain military weapon systems, subsystems, components, or parts to meet military requirements." Dep't of Def., *DOD Dictionary of Military and Associated Terms* 64 (2017), https://perma.cc/Q73E-DMCB. The district court explained that an entity contributes to the Chinese defense industrial base if it makes a product that has substantial military application, even if the product is not directly supplied to or used by the

Chinese military and has commercial uses. *See* JA 1428. The district court emphasized that the phrase "contributor to the Chinese defense industrial base" must be understood in light of Congress' concern in Section 1260H with military-civil fusion—namely, the Chinese government's efforts to "leverag[e] the private sector for military advantage." JA 1429.

Hesai's LiDAR technology has substantial military application and use. LiDAR uses laser technology to create a three-dimensional representation of an object's physical surroundings and is used as part of the navigation systems in autonomous vehicles. *See* JA 1407. As the Department explained in its decision report, Hesai "develops LiDAR products that enable applications across passenger and commercial vehicles and that are used in robotics," and its "dual-use technology [has] substantial applications in the civilian and military sectors." JA 89. This "dual-use" feature of LiDAR "aligns with China's policy of military-civil fusion, which is aimed at modernizing its defense capabilities." *Id.* In other words, the fact that the development of LiDAR has both civilian/commercial and military applications is consistent with the country's military-civil fusion policy. "In the military sphere," the

Department explained, "LiDAR improves navigation, situational awareness, targeting systems, and surveillance capabilities, making it a valuable asset for the Chinese military." *Id.* In fact, "the [People's Liberation Army] uses LiDAR in its development of autonomous vehicles, which can have military applications." *Id.* "Thus," the Department concluded, Hesai "contributes to the Chinese defense industrial base through its development of LiDAR products which are used in military equipment." JA 89.

The Department cited a range of record material in support of its conclusion that Hesai contributes to the Chinese defense industrial base. *See* JA 100-01. The district court referenced a public-source article in the record describing the development of LiDAR in China and the United States. *See* JA 1399-1401; JA 1432. This article details "China's quest for autonomous vehicles" and explains how "any progress towards autonomous capabilities inherently has military applications," particularly as the People's Liberation Army works to "develop[] autonomous vehicles." JA 1399-1400. As the article explains, progress by a Chinese scientific institution in "autonomous vehicles' ability to perceive their surrounding environment and track movements"

inherently has "value to not just associated car manufacturers, but also the [People's Liberation Army]," given "China's policy of Military-Civil Fusion." JA 1399. "At the front line of this race towards fully-realized autonomous vehicles," the article explains, "is the push to dominate the market for LiDAR … systems," which have "bec[o]me the main 'eyes' for self-driving vehicles and driver assistance systems in both military and civilian vehicles." JA 1400.

The article further explains how U.S. companies' dominance of the LiDAR market has been supplanted by Chinese companies with "state subsidies and other support" and that in China, "numerous government organs were directed to surge their aid for 'intelligent vehicles.'" JA 1400. This, in turn, has prompted concerns about Chinese "automobile sensors like cameras and LiDAR gather[ing] massive amounts of data about their surroundings and even passengers, which could easily be used to gather intelligence," including concerns within the U.S. government about Chinese LiDAR products "entering U.S. Government supply chains." *Id.*

The district court also credited the Department's evidence that Hesai worked on "two national-level projects related to the defense industrial base that were supported by the Chinese government." JA 89;

*see* JA 1433. The first project was a "low-cost, high-speed LiDAR signal-processing module project for the National Development and Reform Commission … and the Shanghai Development and Reform Commission." JA 89-90. The Department's decision described the National Development and Reform Commission's "Intelligent Vehicle Innovation and Development Strategy," which "called for developing autonomous driving systems for the country's national defense and military industries and for the military and civilian sectors to jointly tackle key problems." JA 90. The second project was an autonomous-driving LiDAR project for the Chinese Ministry of Science and Technology, an institution that "endeavors to promote military-civilian integration." *Id.* As the district court found, this evidence is "at least somewhat probative of Hesai's past cooperation with Chinese government agencies that are at least in part focused on military-civil integration." JA 1434.

Finally, the court noted evidence in the record submitted by Hesai reflecting that LiDAR technology developed by other entities "is currently being used by the Russian and Chinese militaries." JA 1435 (citing JA 1393).

Thus, the district court properly concluded that the Department proffered substantial evidence to support its determination that Hesai contributes to the Chinese defense industrial base. *See* JA 1434. The record describes the military applications of LiDAR technology; notes Hesai's work with institutions affiliated with the Chinese government on the development of autonomous driving and LiDAR technology; and demonstrates the interest of the Chinese government in the development of such technology for both military and civilian purposes. Taken together, all of the record evidence was sufficient to establish that Hesai is a military-civil fusion contributor to the Chinese defense industrial base. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (recognizing the heightened level of deference owed to agency decisions in matters concerning national security).

**2. a.** Hesai argues that the Department's determination was flawed because it did not find that Hesai "affirmatively assists or supplies the Chinese government with materials, products, or services for defense purposes," Br. 37, but that is not the statutory standard. Again, the plain meaning of the statutory language—"contributor to the Chinese defense industrial base"—resolves any doubts. The Merriam-Webster Dictionary

defines a "contributor" as "someone or something that contributes something or that contributes to something" and defines "contribute" as "to give or supply (something, such as money or time) as a part or share." *Contributor*, Merriam-Webster Dictionary Online, https://perma.cc/UTR2-RQ3G; *Contribute*, Merriam-Webster Dictionary Online, https://perma.cc/3EV3-L58L. The word "contribute" does not require any "affirmative[]" intent "to assist" or "suppl[y]" the recipient with a good or service, let alone to do so "for defense purposes." Br. 37.

The district court properly rejected Hesai's self-serving construction of the statute. As the court explained, "requiring such a direct relationship – such as being a military supplier – appears inconsistent with concerns surrounding 'military-civil fusion'" against which the statute was designed to guard. JA 1425. Section 1260H was written to capture concerns about China's military-civil fusion efforts, and accordingly, to cover not just military suppliers but also private entities engaged in commercial, scientific, and other kinds of development that can be leveraged for military ends. For this reason, it is irrelevant that Hesai's products are not "military grade," Br. 38, since the Department's conclusion rested on the record evidence showing that

the development of these LiDAR technologies could have military use, and Hesai's cooperation in national projects that link the company's research and development work to the Chinese government's military-civil fusion policy. The Department's definition of "defense industrial base" confirms the Department's interpretation of the relevant statutory language, not Hesai's (Br. 35), since it encompasses private entities "with capabilities to perform" or provide certain services or technologies. Dep't of Def., *DOD Dictionary of Military and Associated Terms*, *supra*, at 64.

Had Congress intended for the designation of "Chinese military company" to be reserved for Chinese military suppliers, it could have said so; instead, Congress crafted the statute to encompass a broader range of entities—"military-civil fusion contributors to the Chinese defense industrial base"—and crafted eight definitions of a military-civil fusion contributor to capture different aspects of the Chinese military-civil fusion strategy. Congress also wrote the statute specifically to capture commercial entities, requiring that the entity be "engaged in providing commercial services, manufacturing, producing, or exporting" to be identified as a Chinese military company. § 1260H(g)(2)(B)(ii) (previously § 1260H(d)(1)(B)(ii) (2021)). It should come as no surprise,

then, that Section 1260H covers entities that make products with both military and non-military use.

Hesai's citations to out-of-circuit cases from an unrelated statutory context defining the word "contribute" to require "affirmative" or "active" involvement, Br. 33-34, are inapposite, since any intent requirement was imposed in those cases in light of factors not present here. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515-16 (4th Cir. 2015) (defining "contribution" specifically "for [Resource Conservation and Recovery Act] purposes" to determine whether a defendant "acted to create or cause the contamination"); *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008) (similar). And in any event, to the extent these cases explain that the meaning of the word "contribute" often entails "affirmative action," *see id.*, even that definition does not entail a specific intent to supply the military with one's goods. Hesai's research, development, and production efforts constitute affirmative action.

The Congressional Research Service report that Hesai cites (Br. 34-35) explains that in the domestic context, the term "defense industrial base" is often understood to encompass entities that supply the U.S.

government with goods and services for defense purposes, but it does not define the term "contributor" in Section 1260H, let alone imply a specific-intent requirement. *See* Luke A. Nicastro, Cong. Rsch. Serv., *The U.S. Defense Industrial Base: Background and Issues for Congress* 1 (2024), https://perma.cc/D9H6-UZAP. More generally, it does not make sense to impose an intent requirement on the word "contributor" in Section 1260H based on assorted definitions of the term "defense industrial base" from other contexts, as Hesai suggests (Br. 34). Section 1260H enumerates several definitions of "military-civil fusion contributors," making clear that it is not limiting its focus to military suppliers. It would be illogical to construe the term "defense industrial base" to limit the statute's scope to military suppliers and thereby supplant the statutory definitions of "military-civil fusion contributors."

Nor does it make sense to rely on statutory language referencing the "United States defense industrial base" from the export-control context. *See* Br. 35 (discussing 50 U.S.C. § 4815(d)(3) (defining "a significant negative impact on the United States defense industrial base")). Moreover, that statutory language itself focuses on products "likely to be acquired" and does not limit itself to materials produced or

supplied exclusively for the military, and therefore fails to prove Hesai's point. *See* 50 U.S.C. § 4815(d)(3).

For many of the same reasons, the fact that Hesai discourages the resale of its LiDAR equipment to the military does not undermine the Department's determination. Br. 38. The statute is not concerned with whether the products are directly or indirectly supplied to the Chinese military, but instead whether the company is a "military-civil fusion contributor to the Chinese defense industrial base"—namely, whether its work contributes to the Chinese military-civil fusion strategy and the Chinese defense industrial base. As the record shows, Hesai meets the mark. Even if the military mirrors or adapts the technology that Hesai develops, that would contribute to the military-civil fusion strategy and the defense industrial base; the contribution does not require the military to have used Hesai's products specifically (Br. 38). And the ties between Hesai's presence in China—in this case, specifically in the military-civil fusion enterprise zones that are actively working to support scientific advancement that will have both military and civilian applications—makes clear that Hesai's work is not being conducted entirely independently of the Chinese state. *See also* JA 91 (quoting Hesai's 2023

SEC registration statement as stating that "the [Chinese] government has significant oversight and discretion over our business operations, and it may influence or intervene in our operations at any time").

By the same token, the Department of Commerce's export restrictions are not tied to the same concerns that motivate Section 1260H—namely, the Chinese military-civil fusion strategy—as the regulatory provisions that Hesai cites make clear (Br. 39)—and therefore have no bearing on the propriety of the Department's designation. The same is true of the other government restrictions that Hesai references (Br. 43), which are guided by different statutory and regulatory specifications.

**b.** Contrary to Hesai's suggestions (Br. 41), the district court did not uphold the Department's determination on the basis that any company that produces any product that has both commercial and military application necessarily contributes to the Chinese defense industrial base. In fact, the district court rejected any such interpretation of the statute. *See* JA 1426-27. What the court concluded was that Hesai contributed to the Chinese defense industrial base because it is producing goods and services that substantially benefit the

military in light of their military application and use—of which there was substantial record evidence. And the Department's designation did not rest on the mere potential for military application, as Hesai suggests (Br. 42). To the contrary, the Department assembled record evidence demonstrating Hesai's residence in a military-civil fusion enterprise zone, Hesai's ties to national projects, the Chinese military's interest in LiDAR, and the application of LiDAR in military settings for autonomous vehicle use.

Hesai's argument that the district court "essentially adopted" a "dual-use" standard therefore misses the mark. Br. 45. The court sought more than a showing that a product could have both commercial and military use; it emphasized and gave great weight to the evidence of the "substantial" military application that LiDAR technology has, particularly in China. The record evidence showed a "meaningful" connection between Hesai and the Chinese defense industrial complex, which even Hesai recognizes would be enough. Br. 47.

Critically, it is not the case that "*every* LiDAR manufacturer is subject to listing at the Department's whim" (Br. 42). To be designated, a company not only has to contribute to the Chinese defense industrial

base but must also meet one of the statutory definitions of a military-civil fusion contributor. Other manufacturers may not both reside in a military-civil fusion zone (or meet one of the other statutory definitions) and contribute to the Chinese defense industrial base. Hesai's suggestion that the Department would designate any company "regardless of whether the company makes pocket calculators or advanced missile guidance systems," Br. 44, is likewise a straw-man argument that does not contend with the specific evidence in the record of the technology that Hesai is developing and its military application.

**c.** Hesai takes issue with the evidence in support of the determination that it contributes to the Chinese defense industrial base, but none of its objections establish a sound basis for reversal.

Hesai objects first (Br. 48) to the article from an online source named "Defense One," titled "China Claims Breakthroughs in Autonomous Vehicles," which was part of the administrative record. *See* JA 1432. While the article does not focus on Hesai, the court quoted the article for other points, including China's efforts to advance LiDAR development and the military application of LiDAR technology in autonomous vehicles. *See id.* The relevance of LiDAR technology to the

Chinese government and military helps explain how Hesai's research and development work in the military-civil fusion enterprise zones contributes to the Chinese defense industrial base. Thus, it did not matter whether the article "distinguish[ed] between military-grade sensors and the types of consumer and commercial sensors Hesai supplies," Br. 48, since a military-civil fusion strategy recognizes the role of commercial scientific development in military technological progress. And the court did not err in its reliance on the article.

Nor did the district court rely exclusively on that article. The military application of LiDAR was evident from other aspects of the record as well. For instance, the Department's relisting decision explained that China's National Development Reform Commission was focused on "developing autonomous driving systems for the country's national defense and military industries." JA 90. And to the extent Hesai disputes the Defense One article's discussion of concerns around LiDAR's collection of data or any connection between Hesai and China Electronics Technology Group Corporation (*see* Br. 49-50), those points were not referenced in the Department's decision and are not necessary

to affirm the conclusion that the Department's decision is supported by substantial evidence.

Hesai is also wrong to characterize the district court and the Department as having failed to account for "record evidence that undermined the conclusion that the products in question had 'substantial' military uses." Br. 51. Hesai points to its earlier assertions about the Department of Commerce not imposing "special export restrictions" on Hesai's products and its assertion that it does not make "military-grade" products. *Id.* But neither point has any bearing on the relevant determinations under Section 1260H—whether Hesai resides in a military-civil fusion enterprise zone in China and whether it contributes to the Chinese defense industrial base. As explained, a company may be found to contribute to the Chinese defense industrial base as a military-civil fusion contributor even if it does not supply its products directly to the Chinese military.

It is of no moment that the district court initially described its conclusion as "likely sufficient" to support the finding that Hesai contributes to the Chinese defense industrial base, Br. 51 (emphasis omitted), because it did so before explaining the heightened level of

deference afforded the government in matters concerning national security—a level of deference that is "particularly important here" given the national security concerns animating Section 1260H. The court also noted the deference owed the Department's determination regarding LiDAR's military application, which draws on the agency's "subject matter expertise in a more technical area like military technology," and this Court's longstanding recognition of the propriety of deference to an agency's exercise of its scientific or technical judgment. JA 1434. And in the very next paragraph of its decision, the court eliminated all doubt about the definitive nature of its conclusion when it "conclude[d] that the [Department's] finding that Hesai contributes 'to the Chinese defense industrial base' is supported by substantial evidence in the record." JA 1435. The district court's conclusion was therefore far from "tentative," Br. 51, and this Court should affirm.

**d.** Finally, left with little else to impeach the district court's decision, Hesai takes issue with the district court's consideration of the Defense One article (Br. 52). But this was not error. As the district court explained, although the article was inadvertently omitted from the initial administrative record, the Department explained in a sworn statement

that the article had been directly or indirectly considered in connection with the Department's decision and was left out of the initial administrative record due to an administrative error. JA 1436; JA 124-32. The district court noted this and credited the Department's explanation, recognizing that the Department had relied on the article for the proposition that "LiDAR technology has substantial application in the military context," JA 1436, which is a point made throughout the decision, *see* JA 89-90.

The Department's decision report explained how LiDAR technology was used for autonomous driving systems and separately noted that China's National Development and Reform Commission "called for developing autonomous driving systems for the country's national defense and military industries." JA 89-90. Because the article "merely affirms the [Department's] core contention that it makes throughout the [listing decision]," it was clear that the Department was not using the article as post hoc rationalization for its decision. JA 1436. Moreover, as the district court noted, a remand to the Department for purposes of including the Defense One article in the administrative record "would not be particularly productive since the underlying issues in the case

following remand would likely be identical to those presented here." JA 1437.

## II. The Department of Defense did not violate due process with the Section 1260H designation.

Finally, Hesai argues that the Department violated its procedural-due-process rights when it redesignated Hesai under Section 1260H in October 2024 without first offering notice and an opportunity to be heard. JA 79. To state a procedural-due-process claim, a plaintiff must show that the government deprived the plaintiff of a protected property or liberty interest and used a constitutionally inadequate procedure to do so. *See Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014). Hesai has failed to show that the government deprived it of a protected property or liberty interest of any kind. Even if it had, Section 1260H was enacted to protect the U.S. government from foreign interference and directs the Department to identify Chinese military companies and submit a list of those companies to Congress annually. The national security concerns animating the statutory scheme reinforce the conclusion that the Department's designation process was constitutionally sound. And in any event, as the district court held, Hesai

failed to show that it suffered any prejudice from the purported procedural due-process violation. *See* JA 1441.

**A.** The first step of the due-process inquiry is whether a private party has a property or liberty interest that triggers due-process protections under the Fifth Amendment. *See Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993). Hesai cannot establish that the Section 1260H designation implicates any constitutionally protected interest.

Reputational harm alone is not sufficient to establish the deprivation of a protected property or liberty interest, as Hesai implicitly recognizes (Br. 62). *See Paul v. Davis*, 424 U.S. 693, 712 (1976). As this Court has explained, a plaintiff cannot establish a constitutional violation if the purported "damage flows from injury caused by the defendant to a plaintiff's reputation" alone. *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995) (quotation marks omitted). And to the extent Hesai argues that it has shown a change in its legal status based on potential effects on its ability to work on government contracts in the future, *see id.*, Hesai has failed to identify any specific contracts, benefits, grants, or loans that it applied for or intends to apply

for that it is unable to pursue due to the designation, so its claim is unripe and unfit for review, *see Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023).

Hesai also argues in passing (Br. 64) that it has established a deprivation of a constitutionally protected interest because it has been broadly "preclude[d]" from pursuing its "chosen trade or profession," but it fails to make any such showing. *Taylor*, 56 F.3d at 1506 (quotation marks omitted). Hesai has not shown that any customer's decision not to purchase from Hesai or investor's decision not to invest is attributable to the challenged designation, or that the designation has foreclosed Hesai's ability to develop LiDAR technology. Hesai's papers make generalized assertions about how the designation has "affected" the company's relationships and ability to enter contracts, without identifying any such relationships or contracts that have been affected. *See* Br. 64. This does not come close to a showing that a protected interest was implicated by the designation. *See id.*; *see also Trifax Corp. v. District of Columbia*, 314 F.3d 641, 645 (D.C. Cir. 2003) (explaining that if the alleged loss of a contract is not "traceable" to the challenged agency action, the government cannot be said to have "broadly precluded" the

entity from contracting for purposes of the due-process analysis). And even if Hesai had shown that it intended to apply for certain U.S. government contracts but was precluded from doing so because of the Section 1260H designation, Hesai would still have failed to show that these contracts comprise any more than a fraction of its overall business and therefore would be unable to support any assertion that it has been precluded from pursuing its chosen business on that ground.

This Court's cases involving foreign-terrorist-organization designations do not support Hesai either (Br. 60-62). In *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192 (D.C. Cir. 2001), two organizations petitioned for review of the Secretary of State's designation of them as "foreign terrorist organizations" under the Anti-Terrorism and Effective Death Penalty Act of 1996. *See id.* at 195-96. As a result of the designation, the petitioners were "deprived of the previously held right to … hold bank accounts, and to receive material support or resources from anyone within the jurisdiction of the United States." *Id.* at 204. The Court held that the petitioners had "colorabl[y]" alleged that they had an "interest in a bank account in the United States" that was a "property right[]" allegedly impaired by the designation. *Id.*

Hesai has not alleged any comparable deprivation of a constitutionally protected property right.

Although Hesai attempts to equate the government's designation of a foreign organization in *National Council of Resistance of Iran* with the Department's designation of Hesai under Section 1260H (Br. 61), not all designations are the same for due-process purposes. As this Court recognized in *National Council of Resistance of Iran* and other cases, the due-process inquiry is contextual and depends on the statute at issue, the government interests at stake, and the deprivations alleged. *See National Council of Resistance of Iran*, 251 F.3d at 205. In *People's Mojahedin Organization of Iran v. U.S. Department of State*, 613 F.3d 220 (D.C. Cir. 2010) (per curiam), this Court considered a foreign-terrorist-organization designation and applied the due-process requirements that this Court had deemed required in earlier cases, including *National Council of Resistance of Iran*, to require that the petitioner be provided with additional opportunity to review the relevant unclassified portions of the record. *See id.* at 227-31.

The process that this Court deemed due under the statutory framework that applied in *National Council of Resistance of Iran* and

*People's Mojahedin Organization of Iran* turned on the specific contours of that statute, the government interests at stake, and the deprivations that the petitioners alleged there—none paralleled here. Because the Court had determined that the petitioners in these cases had established the deprivation of a protected property interest, the Court concluded that due-process protections were triggered. Hesai, by contrast, has failed to establish any protected interest implicated by Section 1260H.

**B.** Even if Hesai had shown deprivation of a protected property or liberty interest, due process would not require pre-deprivation notice in the context of the Department's Section 1260H designations. As this Court has recognized, "due process is flexible and calls for such procedural protections as the particular situation demands." *Ralls Corp. v. Committee on Foreign Inv. in the U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014) (quoting *National Council of Resistance of Iran*, 251 F.3d at 205); *see also Bello v. Gacki*, 94 F.4th 1067, 1074 (D.C. Cir. 2024). In crafting Section 1260H, Congress carefully considered how and when the Department would make and publish the annual designations, and Congress opted not to provide notice in advance of the annual listing. That considered legislative choice is reflected in Section 1260H's

"Reporting and Publication" provisions, *see* § 1260H(b), and is consistent with due-process principles. Pre-deprivation notice is not required where (1) the deprivation was "necessary to secure an important governmental or general public interest"; (2) there was a "special need for very prompt action"; and (3) "the [party] initiating the [deprivation was] a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678 (1974) (quotation marks omitted).

All three requirements are satisfied here. First, Section 1260H was enacted to secure the important government interest of protecting the U.S. military supply chain from potential foreign interference. Second, there is a need for prompt government action to protect the U.S. military supply chain from infiltration by foreign adversaries. The statute recognizes this in its requirements that the Department identify entities on at least an annual basis, on the basis of the latest information, and notify Congress of the designations each year. *See* § 1260H(a)-(b). Advance notification of Section 1260H designations would risk allowing designated entities to take measures to obscure their ties to foreign

governments, such as by spinning off assets to create new entities, concealing their ownership, or otherwise shielding relevant information about their activities. Third, the Secretary of Defense is ultimately responsible for making the Section 1260H designations pursuant to the highly circumscribed parameters prescribed by Congress in the statute, ensuring that the designations are necessary and justified. *See id.* Thus, even if the due-process inquiry had been triggered, pre-deprivation notice would not have been required.

This Court has also consistently taken national security concerns into account in determining the degree of process due, even after it has determined that a due-process inquiry is appropriate. *See Bello*, 94 F.4th at 1075 (explaining that what due process requires may vary when national security interests are implicated); *see also National Council of Resistance of Iran*, 251 F.3d at 208-09 (holding that even where due-process protections were triggered, the agency "may provide this notice after the designation where earlier notification would impinge upon the security and other foreign policy goals of the United States" upon an adequate showing to the court). And in the Section 1260H context, pre-

deprivation notice would be particularly inappropriate given the national security concerns at stake.

**C.** This Court can affirm the district court's judgment rejecting Hesai's due-process claim on the above grounds, or in the alternative, it can affirm the district court's conclusion that Hesai failed to show any prejudice from the "purported procedural due process violation." JA 1441. As the district court explained, Hesai does not argue that had it been afforded the additional pre-deprivation process that it desires, it would have offered any evidence that would have affected the decision-making process. *See id.* This is just as true on appeal as it was in district court. Thus, "[i]n the absence of any suggestion of prejudice," this Court cannot conclude that Hesai "was deprived either of procedural due process or of appropriate notice and opportunity for a hearing." *Horning v. Securities & Exch. Comm'n*, 570 F.3d 337, 347 (D.C. Cir. 2009) (quotation marks omitted); *see also Chai v. Department of State*, 466 F.3d 125, 132-33 (D.C. Cir. 2006) (rejecting the petitioners' procedural due process claim challenging their designation as a foreign terrorist organization because "[a]n error is harmless if it was not material to the outcome of the proceeding").

The cases on which Hesai relies do not establish otherwise. In *People's Mojahedin Organization of Iran*, the Court was assessing whether the petitioner had an adequate opportunity to "rebut the unclassified portion of the record." 613 F.3d at 227. And in *National Council of Resistance of Iran*, this Court held that the designated entities had to be provided the unclassified administrative record to which they could respond. *See* 251 F.3d at 209. Here, Hesai has had the administrative record for nearly a year and not identified any evidence that it would have submitted or any argument as to how such evidence would have affected the Department's decision-making process. This is not enough to support a due-process claim. The language Hesai quotes from *Sugar Cane Growers Cooperative of Florida v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002), has no bearing on Hesai's due-process claim either, because it arises out of this Court's discussion of an agency's disclosure obligations under the Administrative Procedure Act. *See id.* at 96-97.

Notably, the Department has established additional process for entities designated on the annual Section 1260H List that seek to challenge their designation. Any entity on the Department's annual list may request reconsideration of the Department's determination and

provide additional information in support of its request to be removed from the list. *See* 90 Fed. Reg. 1,105, 1,106 (Jan. 7, 2025). That more than satisfies any constitutional process due.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

SHARON SWINGLE

*s/ Urja Mittal*
URJA MITTAL
*Attorneys, Appellate Staff*
*Civil Division, Room 7248*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-4895*
*urja.mittal@usdoj.gov*

January 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,486 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Urja Mittal*
URJA MITTAL

# ADDENDUM

**TABLE OF CONTENTS**

Section 1260H (as codified at 10 U.S.C. § 113 note) ............................ A1

Section 1260H (as originally enacted in 2021)...................................... A7

**Section 1260H (as codified at 10 U.S.C. § 113 note) – Public Reporting of Chinese Military Companies Operating in the United States**

Pub. L. 116–283, div. A, title XII, § 1260H, Jan. 1, 2021, 134 Stat. 3965, as amended by Pub. L. 118–159, div. A, title XIII, § 1346, Dec. 23, 2024, 138 Stat. 2123, provided that:

(a) **Determination.—**

The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company.

(b) **Reporting and Publication.—**

(1) **Annual report.—**

Not later than April 15, 2021, and annually thereafter until December 31, 2030, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to subsection (a) to be a Chinese military company, in classified and unclassified forms, and shall include in such submission, as applicable, a justification for adding any entities to the list and for deleting any entities from a prior list.

(2) **Concurrent publication.—**

(A) **In general.—**

Concurrent with the submission of each list described in paragraph (1), the Secretary shall publish the unclassified portion of such list in the Federal Register.

(B) **Inclusion.—**

The publication required by subparagraph (A) shall include, for each entity included in the unclassified portion of such list, the justification for inclusion in such list.

(3) **Annual revisions.—**

The Secretary shall make additions or deletions to the most recent list submitted under paragraph (1) not less frequently than annually based on the latest information available.

(4) **Language requirement.—**

The Secretary shall prepare the list required by paragraph (1) in English and in Mandarin Chinese. If the name of a Chinese military company included on the list is referred to by the Government of China in a language other than English or Mandarin Chinese, the Secretary shall also include on the list the name of that company in that language.

(c) **Consultation.—**

The Secretary may consult with the head of any appropriate Federal department or agency in making the determinations described in subsection (a) and shall transmit a copy of each list submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency.

(d) **Defense Industrial Base Report.—**

(1) **In general.—**

Not later than December 31, 2026, and biennially thereafter through December 31, 2031, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a report on the status of Department of Defense procurement restrictions on entities included in the list described in subsection (b)(1).

(2) **Elements.—**Each report required by paragraph (1) shall include the following:

(A) A list of each entity included in the list described in subsection (b)(1) that is likely present in the United States defense industrial base.

(B) Available unclassified data on any such entity and its presence within the United States defense industrial base.

(C) A description of any update to policies or procedures implemented to enforce procurement restrictions on entities included in the list described in subsection (b)(1).

(e) **Procedures for Implementation.—**

The Secretary of Defense shall establish such reasonable procedures as are necessary to implement the provisions of this section, including for obtaining information from outside entities relevant to the list described in subsection (b)(1) and procedures for removal of entities from the list described in subsection (b)(1).

(f) **Judicial Review.—**

In any judicial review of a determination made under this section, if the determination was based on classified information (as defined in section 1(a) of the Classified Information Procedures Act [18 U.S.C. App.]) such information may be submitted to the reviewing court ex parte and in camera. This subsection does not confer or imply any right to judicial review.

(g) **Definitions.—**In this section:

(1) **Affiliated with.—**

The term 'affiliated with' means in close formal or informal association.

(2) **Chinese military company.—**The term 'Chinese military company'—

(A) does not include natural persons;

(B) means an entity that is—

(i)

(I) directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State

Security (MSS), or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND); or

(II) identified as a military-civil fusion contributor to the Chinese defense industrial base; and

(ii) engaged in providing commercial services, manufacturing, producing, or exporting; and

(C) includes a wholly-owned or wholly-controlled subsidiary or wholly-owned or wholly-controlled affiliate of such an entity or any entity that owns in the aggregate, directly or indirectly, 50 percent or more of any entity or entities described in subparagraph (B).

(3) **Military-civil fusion contributor.**—The term ‘military-civil fusion contributor’ includes any of the following:

(A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives, including selection or designation as a ‘Single Champion’, ‘Little Giant’, or any other successor selection or designation as an enterprise associated with industrial planning or military-civil fusion efforts.

(B) Entities managed, overseen, or supervised by, otherwise under the control of, or affiliated with

(including by means of formal participation in research partnerships and projects)—

(i) the Chinese Ministry of Industry and Information Technology (MIIT);

(ii) the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC);

(iii) the State Administration of Science, Technology and Industry for National Defense (SASTIND);

(iv) the Ministry of State Security (MSS); or

(v) the People's Liberation Army.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, including a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

(4) **Operating directly or indirectly in the United States or any of its territories and possessions.—**

With respect to an entity, the term 'operating directly or indirectly in the United States or any of its territories and possessions' includes an entity selling goods in, or receiving goods or services from, the United States or any of its territories or possessions, regardless of whether the entity has a physical presence in the United States.

(5) **People's Liberation Army.—**

The term 'People's Liberation Army' means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security or intelligence element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate, including other Chinese military and paramilitary elements, security forces, police, law enforcement, border control, and the Ministry of State Security.

## Section 1260H (as originally enacted in 2021) – Public Reporting of Chinese Military Companies Operating in the United States

(a) **Determination.—**

The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company.

(b) **Reporting and Publication.—**

(1) **Annual Report**.—

Not later than April 15, 2021, and annually thereafter until December 31, 2030, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to subsection (a) to be a Chinese military company, in classified and unclassified forms, and shall include in such submission, as applicable, an explanation of any entities deleted from such list with respect to a prior list.

(2) **Concurrent Publication.—**

Concurrent with the submission of each list described in paragraph (1), the Secretary shall publish the unclassified portion of such list in the Federal Register.

(3) **Ongoing Revisions.—**

The Secretary shall make additions or deletions to the most recent list submitted under paragraph (1) on an ongoing basis based on the latest information available.

(c) **Consultation.—**

The Secretary may consult with the head of any appropriate Federal department or agency in making the determinations described in subsection (a) and shall transmit a copy of each list submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency.

(d) **Definitions.**—In this section:

(1) **Chinese military company.**—The term "Chinese military company"—

(A) does not include natural persons; and

(B) means an entity that is—

(i)

(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party; or

(II) identified as a military-civil fusion contributor to the Chinese defense industrial base; and

(ii) engaged in providing commercial services, manufacturing, producing, or exporting.

(2) **Military-civil fusion contributor.**—The term "military-civil fusion contributor" includes any of the following:

(A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

(3) **People's Liberation Army.—**

The term "People's Liberation Army" means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate.